IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2006-0174-PR |
| Petitioner/Cross-Respondent, | ) | DEPARTMENT A |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| SAMUEL WAYNE SWOOPES, | ) | |
| | ) | |
| Respondent/Cross-Petitioner. | ) | |
| | ) | |

PETITION FOR REVIEW FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-15623

Honorable Frank Dawley, Judge Pro Tempore

REVIEW GRANTED;
RELIEF GRANTED IN PART AND DENIED IN PART

---

Barbara LaWall, Pima County Attorney
 By Taren M. Ellis and Jacob R. Lines

Tucson
Attorneys for Petitioner/
Cross-Respondent

Isabel G. Garcia, Pima County Legal Defender
 By Joy Athena

Tucson
Attorneys for Respondent/
Cross-Petitioner

---

P E L A N D E R, Chief Judge.

¶1        Based on a home invasion in 1984, respondent/cross-petitioner Samuel Wayne

Swoopes was convicted after a jury trial of three counts each of armed robbery and

kidnapping and one count each of first-degree burglary, sexual assault, and aggravated

robbery.  This court affirmed the convictions and sentences on appeal, *State v. Swoopes*, 155

Ariz. 432, 747 P.2d 593 (App. 1987) (*Swoopes I*), and our supreme court denied review.

*State v. Swoopes*, Ariz. Sup. Ct. No. CR-87-0299-PR (order filed Jan. 12, 1988).  Swoopes

first sought post-conviction relief in 1990, which both the trial court and this court denied.

*State v. Swoopes*, No. 2 CA-CR 90-0715-PR (order filed Feb. 21, 1991).  Thereafter,

Swoopes sought relief in federal district court, filing a petition for writ of habeas corpus.

Ultimately, in March 2003, the district court stayed that proceeding so Swoopes could

"bring[] his unexhausted claims to the state courts."[1]  Swoopes then commenced this, his

second post-conviction proceeding, pursuant to Rule 32, Ariz. R. Crim. P., 17 A.R.S.

¶2        Therein, Swoopes raised claims of, inter alia, ineffective assistance of counsel

(IAC), newly discovered evidence, and violation of his right to be present at all critical stages

of trial court proceedings.  More specifically, he claimed that the judge who conducted the

trial (Judge Thomas Meehan) had responded improperly and inaccurately to a question from

the jury during deliberations; that Swoopes did not learn about the response until it was

---

[1]*See Swoopes v. Sublett*, 527 U.S. 1001, 119 S. Ct. 2335 (1999) (granting petition for writ of certiorari, vacating judgment, and remanding case to federal court of appeals for reconsideration); *Swoopes v. Sublett*, 196 F.3d 1008, 1011 (9th Cir. 1999) (decision on remand finding Swoopes not required to seek review by Arizona Supreme Court to exhaust claims for federal habeas corpus purposes, and remanding case to district court for further proceedings).

discovered by his counsel during the federal habeas proceedings; that the error was exacerbated by the prosecutor's closing argument; that Swoopes was thereby deprived of a fair trial; and that both trial and appellate counsel had been ineffective in, respectively, not objecting to Judge Meehan's response or otherwise protecting Swoopes's rights and not raising this claim as an issue on appeal.

¶3 After argument, the trial court granted relief and ordered a new trial. The state seeks review of that order, arguing Swoopes is precluded from obtaining relief on any of his claims. In his response and cross-petition for review, Swoopes urges us to deny review or relief on the state's petition and alternatively challenges the trial court's denial of relief on the remaining claims he raised in this Rule 32 proceeding.

¶4 We will not disturb a trial court's ruling on a petition for post-conviction relief absent a clear abuse of discretion. *State v. Schrock*, 149 Ariz. 433, 441, 719 P.2d 1049, 1057 (1986). "We review a trial court's factual findings for clear error." *State v. Herrera*, 183 Ariz. 642, 648, 905 P.2d 1377, 1383 (App. 1995). But a trial court's erroneous ruling on a question of law, such as whether a post-conviction claim is or is not precluded, constitutes an abuse of discretion. *See State v. Wall*, 212 Ariz. 1, ¶ 12, 126 P.3d 148, 150 (2006); *State v. Jensen*, 193 Ariz. 105, ¶¶ 9-13, 970 P.2d 937, 938-39 (App. 1998). Thus, although we generally defer to a trial court's factual findings unless clearly erroneous, we are not bound by a court's legal ruling on the issue of preclusion in post-conviction proceedings. *See* A.R.S. § 13-4232(C) ("[A]ny court on review of the record

3

may determine and hold that an issue is precluded regardless of the state's failure to raise the preclusion issue."); Ariz. R. Crim. P. 32.2(c) (same).

¶5    Finding Swoopes's IAC and related claims precluded, we conclude that the trial court erred as a matter of law in ruling otherwise and in granting him post-conviction relief. We further conclude that the court did not abuse its discretion by denying relief on Swoopes's remaining claims.

## I.

¶6    Identification was the primary issue in this case. Swoopes, along with two other men, entered the home of Linda and Randy D., a married couple, robbing them and their guest Mark H. at gunpoint. One of the other men sexually assaulted Linda. The victims eventually identified Swoopes as the gunman. But shortly after the incident they were unable to clearly describe Swoopes or identify him in a photographic lineup. None of the victims described Swoopes as having any significant facial scarring; however, it is undisputed that Swoopes has a large blemish or discoloration above his right eye.

¶7    Well over a year after the incident, Randy and Mark learned there had been a similar home invasion in the neighborhood the same night and the suspect was being tried on various charges relating to that incident. They attended that trial, observed Swoopes, and immediately recognized him as the gunman in the crimes against them. Thereafter, Linda identified Swoopes in a live lineup, telling police she was looking for a scar that was an identifying feature of his face. All three victims identified Swoopes at trial in this case.

4

¶8 Michael Mussman, the attorney who represented Swoopes on the charges that arose out of the other home invasion, testified at trial in this case about having seen Randy and Mark at the prior trial in the other case and about having attended the live, June 1985 lineup during which Linda had identified Swoopes. Mussman made similar statements in his November 2002 affidavit, which was submitted in the federal habeas corpus proceeding and filed below in support of Swoopes's second post-conviction petition in this matter. Mussman stated at trial and in his affidavit that Linda had told Detective Skuta she was looking for a scar. In his affidavit he also noted she had not previously mentioned a scar. Swoopes also submitted in both this post-conviction proceeding and the prior federal court proceeding an affidavit of investigator Gene Reedy of the Pima County Legal Defender's Office, who also had attended the 1985 live lineup and described what he considered "very unusual" circumstances surrounding that. Swoopes unsuccessfully challenged the identification process as unduly suggestive before trial, during trial, and on appeal. *See Swoopes I*, 155 Ariz. at 434-35, 747 P.2d at 595-96.

¶9 During its deliberations, the jury sent a written question to the trial judge, Judge Meehan, asking to see "any statement made by Linda of a blemish before the physical lineup." The judge responded in writing that "[t]he statement is not admissible" and directed the jurors to "[r]ely on [their] collective memories." There was no record concerning the question, other than the written question itself and the response, or of the judge's having consulted counsel about the question and the response the court intended to

5

give. The trial judge and the prosecutor who tried the case are now deceased, and as discussed below, Swoopes's trial counsel has no recollection of the event.

## II.

¶10 Swoopes contended below in this second Rule 32 proceeding that the trial judge's response, which he claims was an improper, ex parte communication with the jury, violated his due process right to a fair trial, infringed his right to be present at all critical stages of the proceedings, and resulted in fundamental error. Swoopes submitted a statement by one of the jurors, Winsome M., who apparently had been involved in sending the question to the judge, about the importance of the question and answer to the jury's verdicts. Swoopes contended the error was compounded by the prosecutor's false suggestion during closing argument that the victims had relied on the scar or blemish to identify Swoopes from the beginning.

¶11 Swoopes acknowledged in his affidavit supporting his second petition for post-conviction relief he had known "some time before . . . fil[ing] a pro se, supplemental opening brief in the direct appeal" that the jury had asked during deliberations whether victim Linda D. had ever mentioned before the physical lineup having seen a scar or blemish on the gunman's face.[2] He claimed that he also "was told . . . the judge had responded . . . in the

_____

[2]Swoopes also averred that, although he could not remember "exactly when" he was told about the note before his direct appeal, he "may have been told . . . by [his] trial attorney." Thus, it is not at all clear that Swoopes was unaware during trial of the note from the jury, and in fact he acknowledged in his response filed in this court that he "was aware that the jury had a question."

6

neutral, without giving [the jurors] any more information or instruction," and that he did not learn about the judge's actual response or personally see the jury's note and the response until sometime in 2002, during the habeas proceedings in federal court.

¶12 Swoopes maintained, inter alia, he was entitled to post-conviction relief based on newly discovered evidence, pursuant to Rule 32.1(e). He also contended both his trial and appellate counsel had been ineffective in not raising the claims relating to Judge Meehan's handling of the jury note, suggesting the error caused by the purported improper ex parte communication by Judge Meehan with the jury was fundamental and of "sufficient constitutional magnitude" that it was not waived by his failure to raise it until this proceeding. Ariz. R. Crim. P. 32.2 cmt. Swoopes also made a claim of actual innocence, seeking relief pursuant to Rule 32.1(h).

¶13 Swoopes's trial counsel, Michael Addis, stated in his affidavit, submitted in support of both the Rule 32 petition below and the prior federal habeas proceeding, that he did not recall the note that had been submitted by the jury during its deliberations. He stated he "was shown a copy of that note in 2002" and did not remember having seen Judge Meehan's response at trial but if he had, he would have objected because

> the response [was] an improper and inaccurate comment on the evidence; as written, the response would have given the jury the false belief that Linda [D.] had made a statement to police—at some time prior to her identification of Mr. Swoopes in the live lineup—in which she mentioned the existence of a scar on the gunman; the response therefore would have substantially prejudiced Mr. Swoopes by greatly and improperly enhancing

7

the credibility of Linda [D.]'s identification which the jury was questioning and clearly had doubts about.

¶14 Notwithstanding those averments, the trial court found there was insufficient evidence that any ex parte communication had occurred between Judge Meehan and the jury. Because that finding is not clearly erroneous, we have no basis for disturbing it. *See Herrera*, 183 Ariz. at 648, 905 P.2d at 1383. That finding, in turn, arguably supports an inference that Swoopes's trial counsel had known of, been present for, or otherwise been consulted on Judge Meehan's response to the jury's note.

¶15 Although Swoopes's trial counsel avowed he "would have objected to the judge's response if [he] had been made aware of it," such speculative assertions do not establish that any improper ex parte communication occurred between the trial judge and jury. *See State v. Rosario*, 195 Ariz. 264, ¶ 23, 987 P.2d 226, 230 (App. 1999) (claim for post-conviction relief must be based on "a provable reality, not mere speculation"). And, importantly, Swoopes's trial counsel acknowledged he simply had "no recollection of the mid-deliberation note that was submitted by the jury to the trial judge," had "no recollection of whether there was a hearing in court to discuss" that note, and simply "[did] not recall having ever before [2002] seen the response to the jury which was written on it by Judge Meehan." Again, trial counsel's lack of recollection negates neither the trial court's observation that Judge Meehan probably "contacted counsel 'off the record' about the note as was customary and failed to make a subsequent record," nor the court's implicit ruling that no "'ex parte' communication with the jury" had occurred. *Cf. Graham County v.*

8

*Buhl*, 76 Ariz. 275, 279, 263 P.2d 537, 539 (1953) (taking judicial notice of common practice of trial court judges).

### III.

¶16     That no improper ex parte communication occurred, however, does not resolve the question of whether Swoopes's claims relating to the jury note are precluded. Rule 32.2(a)(3) provides that a defendant is precluded from obtaining post-conviction relief "based upon any ground . . . waived at trial, on appeal, or in any previous collateral proceeding," except claims, such as claims of newly discovered evidence, that are expressly excepted from the rule of preclusion. *See* Ariz. R. Crim. P. 32.2(b); *see also* A.R.S. § 13-4232; Ariz. R. Crim. P. 32.1(d), (e), (f), (g), and (h).

¶17     Of the various, specified exceptions to preclusion set forth in Rule 32.2(b), Swoopes relied below primarily on the exception for "newly discovered material facts," Rule 32.1(e), stating that was "the bas[i]s for all of [his] claims."[3]  In other words, Swoopes's claim hinged largely on his assertion of "newly discovered [facts] that [Judge Meehan had] engaged in an <u>ex parte</u> communication with the jury, in which <u>the judge falsely instructed the jurors</u> that Linda D[.] had made a statement about the scar prior to the physical lineup." The trial court apparently rejected Swoopes's claim of newly discovered facts, stating "the note itself and the Judge's response have always been part of the court file and available for

---

[3]Swoopes also included below a claim that he "<u>is factually innocent of the crimes of which he was convicted</u>."  If proven, such a claim is not subject to preclusion. *See* Ariz. R. Crim. P. 32.1(h), 32.2(b).  The trial court, however, denied relief on that claim, and we have no basis for disturbing its ruling. *See* ¶ 48, *infra*.

inspection." But the court further found that, although Swoopes "was made aware of the note soon after the jury returned its verdicts," he personally "did not learn of the contents of the note and response until his most recent petition was being prepared."

¶18 Although the trial court's order is not entirely clear on this point, the court expressly ruled "[t]he jury note is not newly discovered evidence." And Swoopes acknowledges and challenges the trial court's determination that he was not entitled to post-conviction relief pursuant to Rule 32.1(e). Considered in their entirety and in context, the trial court's findings of fact and legal conclusions suggest it determined the note and the trial judge's response had existed at the time of trial and, through the exercise of diligence, could have been discovered previously. These determinations are supported by the record. Consequently, Swoopes was not entitled to relief on this ground, *see* Ariz. R. Crim. P. 32.1(e)(2), and the trial court did not abuse its discretion in so ruling. *See State v. Bilke*, 162 Ariz. 51, 52-53, 781 P.2d 28, 29-30 (1989) (defendant must show evidence existed at time of trial, defendant exercised diligence in presenting claim, and evidence is not merely cumulative or impeaching, but relevant and, if known, would have changed outcome of trial); *see also State v. Mata*, 185 Ariz. 319, 333, 916 P.2d 1035, 1049 (1996) ("Simply because defendant presents the court with evidence for the first time does not mean that such evidence is 'newly discovered.'").

¶19 Having upheld the trial court's ruling that Swoopes's claim does not fall within Rule 32.1(e) as newly discovered evidence, we next must determine if the court's ultimate

refusal to find the claim precluded is otherwise supportable. Unfortunately, the precise legal basis for that ruling is not clear. The trial court stated that, "[b]ecause [the jury note] issue goes to the fundamental fairness of the trial and because [Swoopes] did not personally waive it, it would be unfair to preclude [his] claim." But our supreme court has not recognized fairness as a relevant, let alone controlling, factor in resolving preclusion issues. *See Stewart v. Smith*, 202 Ariz. 446, ¶ 12, 46 P.3d 1067, 1071 (2002); Ariz. R. Crim. P. 32.2 and 32.2 cmt.

¶20 Further complicating our analysis is the somewhat confusing approach Swoopes has used in arguing against preclusion, both in the trial court and on review to this court. For example, he argues he "never waived his claim to a fair jury trial and to be present at all critical stages of the proceedings" and, therefore, Rule 32.2(a)(3) does not apply to those claims. Swoopes further argues his IAC claim is not precluded because "he did not knowingly, intelligently, and voluntarily waive his right to effective appellate counsel and the rights counsel failed to protect." But whether Swoopes's claim is based purely on alleged IAC or, rather, on alleged violations of various substantive rights, we conclude his claim relating to Judge Meehan's response to the jury's note is precluded. Therefore, the trial court abused its discretion in granting relief on that claim. And, contrary to Swoopes's contention, our supreme court's decision in *Smith*, 202 Ariz. 446, 46 P.3d 1067, does not support his argument that this claim is not precluded; indeed, *Smith* supports the opposite conclusion.

11

## IV.

**¶21**       In *Smith*, our supreme court examined the distinction between claims that may be precluded under Rule 32.2 based on the defendant's mere failure to raise them previously and claims that require a personal waiver before they may be deemed waived and, therefore, precluded. Procedurally, *Smith* involved a defendant who previously had litigated "a series of unsuccessful petitions for state post-conviction relief," one of which (the third) had raised IAC claims against his trial and appellate counsel. *Smith*, 202 Ariz. 446, ¶ 4, 46 P.3d at 1069. As the court pointed out, the 1992 comment to Rule 32.2 acknowledged that claims of "sufficient constitutional magnitude" must be knowingly, voluntarily, and intelligently waived by the defendant before they may be precluded pursuant to Rule 32.2(a)(3). *Smith*, 202 Ariz. 446, ¶ 8, 46 P.3d at 1070. The court stated,

> The question whether an asserted ground is of "sufficient constitutional magnitude" to require a knowing, voluntary and intelligent waiver for purposes of Rule 32.2(a)(3), see Comment to Rule 32.2(a)(3), does not depend upon the merits of the particular ground. It depends merely upon the particular right alleged to have been violated.

202 Ariz. 446, ¶ 10, 46 P.3d at 1071; *see also id.* ¶ 3.

**¶22**       As the supreme court noted in *Smith*, when Rule 32.2 was amended in 1992, a comment was added:

> "[S]ome issues not raised at trial, on appeal, or in a previous collateral proceeding may be deemed waived without considering the defendant's personal knowledge, unless such

12

knowledge is specifically required to waive the constitutional right involved. If an asserted claim is of sufficient constitutional magnitude, the state must show that the defendant 'knowingly, voluntarily and intelligently' waived the claim. For most claims of trial error, the state may simply show that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding, and that would be sufficient to show that the defendant has waived the claim. If defense counsel's failure to raise an issue at trial, on appeal or in a previous collateral proceedings is so egregious as to result in prejudice as that term has been constitutionally defined, such failure may be raised by means of a claim of ineffective assistance of counsel."

202 Ariz. 446, ¶ 8, 46 P.3d at 1070, *quoting* former Ariz. R. Crim. P. 32.2 cmt.[4] The court explained in *Smith* how this analytical framework is applied to claims of ineffective assistance of counsel.

With some petitions, the trial court need not examine the facts. For example, if a petitioner asserts ineffective assistance of counsel at sentencing, and, in a later petition, asserts ineffective assistance of counsel at trial, preclusion is required without examining facts. The ground of ineffective assistance of counsel cannot be raised repeatedly. There is a strong policy against piecemeal litigation. *See State v. Spreitz*, 202 Ariz. 1, 39 P.3d 525 (2002). In other situations, the court must determine the particular right involved by looking at the facts of the claim, not to decide its merits, but to decide whether, at its core, the claim implicates a significant right that requires a knowing, voluntary, and intelligent waiver for preclusion to apply under Rule 32.2(a)(3). Thus, if petitioner asserts ineffective assistance of counsel for the first time in a successive Rule 32 petition, the question of preclusion is determined by the

_____

[4]Effective December 1, 2002, our supreme court again amended its comment to Rule 32.2 by deleting the last sentence of the 1992 comment quoted above. *See* 203 Ariz. LXX (2002); Ariz. R. Crim. P. 32.2 cmt., 17 A.R.S.

nature of the right allegedly affected by counsel's ineffective performance. If that right is of sufficient constitutional magnitude to require personal waiver by the defendant and there has been no personal waiver, the claim is not precluded. If it is not of such magnitude, the claim is precluded.

202 Ariz. 446, ¶ 12, 46 P.3d at 1071.

¶23    Because Swoopes raised below a separate claim of IAC and argues on review that he "did not waive the right to effective appellate counsel," we first address his IAC claim. It is undisputed that Swoopes raised a claim of IAC in his first post-conviction petition in 1990.[5] In general, when "ineffective assistance of counsel claims are raised, or could have been raised, *in a Rule 32 post-conviction relief proceeding*, subsequent claims of ineffective assistance will be deemed waived and precluded." *State v. Spreitz*, 202 Ariz. 1, ¶ 4, 39 P.3d 525, 526 (2002); *see also State v. Bennett*, 213 Ariz. 562, ¶ 14, 146 P.3d 63, 67 (2006) (same); *Mata*, 185 Ariz. at 334, 916 P.2d at 1050 (rejecting approach that would permit "a never-ending tunnel" of post-conviction proceedings in which "defendants

_____

[5]We have been provided very little to tell us precisely what issues were raised in the first Rule 32 proceeding, and because of the age of that proceeding, our records do not contain any documents shedding light on that question. And, in 1990, when Swoopes filed his petition for review in this court, a defendant was not required to submit a memorandum with the petition for review but, rather, could seek review summarily, which Swoopes did, as the copy of the petition for review attached to the post-conviction petition in this proceeding shows. The record does reflect, however, that in a "Petition for Review of Post-Conviction Relief" Swoopes filed with our supreme court in November 1991, he listed IAC as an issue presented. In addition, in a January 2002 filing in the federal habeas proceeding, Swoopes acknowledged having previously "presented th[e] issue [of IAC] to the Arizona courts by raising the claim in his [first] pro se petition for post-conviction relief" in 1990.

could endlessly litigate effectiveness of counsel by claiming that their latest version . . . was not presented on earlier petitions due to counsel's inadequate representation").[6]

¶24     This is not a situation in which a petitioner "asserts ineffective assistance of counsel *for the first time* in a successive Rule 32 petition." *Smith*, 202 Ariz. 446, ¶ 12, 46 P.3d at 1071 (emphasis added). Having previously raised IAC claims in his first Rule 32 proceeding, "the nature of the right allegedly affected by counsel's ineffective performance" is neither determinative nor relevant. *Id*. Rather, because IAC claims "cannot be raised repeatedly," and because our supreme court has expressed "a strong policy against piecemeal litigation," "preclusion is required without examining facts." *Id.; cf. State v. Herrera*, 183 Ariz. 642, 647, 905 P.2d 1377, 1382 (App. 1995) ("Once the issues have been narrowed and presented, appellate counsel's waiver of other possible issues binds the defendant, and those waived issues cannot be resurrected in post-conviction proceedings."), *citing State v. Alford*, 157 Ariz. 101, 102-03, 754 P.2d 1376, 1377-78 (App. 1988).

¶25     Implicitly acknowledging that IAC claims against trial counsel were previously raised and are now precluded, *see State v. Conner*, 163 Ariz. 97, 100, 786 P.2d 948, 951

---

[6]In *State v. Bennett*, 213 Ariz. 562, ¶ 14, 146 P.3d 63, 67 (2006), our supreme court acknowledged its holding in *State v. Spreitz*, 202 Ariz. 1, ¶ 4, 39 P.3d 525, 526 (2002), that, in general, claims of ineffective assistance of counsel that were raised or could have been raised in an initial post-conviction proceeding are regarded as waived and precluded if raised in a successive petition. But, that rule does not apply when appellate counsel and counsel in the first Rule 32 proceeding are one and the same because appellate counsel is not expected to raise and argue his or her own ineffectiveness. *Bennett*, 213 Ariz. 562, ¶¶ 14-15, 146 P.3d at 67. *Bennett* is not implicated here because Swoopes was represented by different attorneys on appeal and in his first Rule 32 proceeding.

(1990), Swoopes argued below in this second Rule 32 proceeding that his "claim of appellate counsel ineffectiveness is not precluded because this is the first time he has raised that claim." He repeats that argument on review. But in its opinion on remand in the federal habeas proceedings, the Ninth Circuit Court of Appeals noted the district court had found that claims of IAC both at trial and on direct appeal "were raised in Swoopes's [first] Rule 32 petition." *Swoopes v. Sublett*, 196 F.3d 1008, 1009 & 1008 n.1 (9th Cir. 1999). And, again, successive IAC claims "will be deemed waived and precluded" not only when they previously were raised, but also when they "could have been raised" in a prior Rule 32 proceeding. *Spreitz*, 202 Ariz. 1, ¶ 4, 39 P.3d at 526; *see also Bennett*, 213 Ariz. 562, ¶ 15, 146 P.3d at 67 (IAC claim not raised in defendant's first post-conviction relief petition "[n]ormally . . . would now be precluded"). Accordingly, even if Swoopes did not specifically assert an IAC claim against appellate counsel before this proceeding, it is no less precluded.[7] For these reasons, to the extent Swoopes sought relief based on an alleged IAC

---

[7]Outside the context of federal habeas corpus proceedings, the precise implications of our supreme court's holding in *Smith* remain somewhat obscure. But what is clear from the United States Supreme Court's subsequent opinion in Smith's case is that Rule 32.2(a)(3) continues to permit a finding of waiver and preclusion when a defendant has failed to assert IAC claims in a first post-conviction proceeding. *See Stewart v. Smith*, 536 U.S. 856, 860-61, 122 S. Ct. 2578, 2581-82 (2002) ("The state court did not even reach the merits of respondent's ineffective-assistance-of-trial-counsel claim, finding it waived because respondent had failed to raise it in prior petitions for post-conviction relief. . . . [T]he state court's determination that respondent waived his ineffective-assistance-of-counsel claim under Ariz. Rule Crim. Proc. 32.2(a)(3) did not require an examination of the merits of that claim.").

claim, the trial court erred in ruling that Swoopes "is not precluded from raising his claim at this time."[8]

**V.**

¶26 Nonetheless, *Smith* recognized a possible exception to preclusion under Rule 32.2(a)(3) for other claims that involve a right "of sufficient constitutional magnitude to require personal waiver by the defendant." *Id*. ¶ 12. In an effort to bring his claim within this exception to preclusion, Swoopes argues that, unless personally waived in a knowing, voluntary, and intelligent manner, "a defendant has a right of sufficient constitutional magnitude to be present when the judge answers a deliberating jury's question about a factual matter." Because that right was neither recognized nor waived before "the trial judge communicated his answer to the deliberating jury's factual question," Swoopes further argues, his claim is not precluded even though raised for the first time in this second Rule 32 proceeding. We conclude, however, that any error here was trial error and did not involve a right of "sufficient constitutional magnitude" so as to render preclusion principles inapplicable.

¶27 The constitutional rights on which Swoopes bases his argument are the general due process right of every defendant to a fair trial, which the trial court focused on in

---

[8]We note that, although the trial court did not expressly address or make any findings on Swoopes's IAC claims, the court stated "[t]he failure to previously raise this issue [relating to the jury note and response] rests on the shoulders of previous counsel." The court, however, did not identify which counsel it was referring to or what effect, if any, that finding might have on the legal issues relating to preclusion.

granting relief,[9] *see Rose v. Clark*, 478 U.S. 570, 579, 106 S. Ct. 3101, 3106 (1986), and the Sixth Amendment right "to be present at all critical stages of the proceedings." *See State v. Dann*, 205 Ariz. 557, ¶ 53, 74 P.3d 231, 245 (2003); *State v. Schackart*, 190 Ariz. 238, 255, 947 P.2d 315, 332 (1997). But, as for the due process claim, any error, including trial error, could be characterized as affecting a defendant's right to a fair trial. If that were sufficient to bring the error under the umbrella of sufficient constitutional magnitude for purposes of Rule 32.2, all error could be so characterized, and arguably, no claim could be precluded without a personal waiver. In our view, this is not what our supreme court intended in *Smith*.

¶28		The court in *Smith* recognized that the mere assertion by a defendant that his or her right to a fair trial has been violated is not a claim of sufficient constitutional magnitude for purposes of Rule 32.2. 202 Ariz. 446, ¶ 12, 46 P.3d at 1071. Rather, to avoid preclusion, a defendant must show a constitutional right is implicated, one that can only be waived by a defendant personally. *Id.* The court noted some of the relatively few rights that can be so characterized. *Id.* ¶ 9, *citing State v. Moody*, 192 Ariz. 505, ¶ 22, 968 P.2d 578, 582 (1998) (waiver of right to counsel); *State v. Butrick*, 113 Ariz. 563, 566, 558 P.2d 908,

---

[9]The trial court ultimately ordered a new trial after finding that a factually unsupported portion of "the prosecutor's argument and [Judge Meehan's] subsequent response to the jury note combined to deprive [Swoopes] of a fair trial." For reasons noted above, however, that finding does not necessarily equate to a finding that any right "of sufficient constitutional magnitude to require personal waiver by the defendant" was at issue and violated, nor did the trial court make any such finding. *Stewart v. Smith*, 202 Ariz. 446, ¶ 12, 46 P.3d 1067, 1071 (2002).

911 (1976) (waiver of right to jury trial); *State v. Smith*, 197 Ariz. 333, ¶ 17, 4 P.3d 388, 394 (App. 1999) (right to twelve-person jury); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 237, 93 S. Ct. 2041, 2052-53 (1973) ("Almost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial."); *cf. State v. Lee*, 142 Ariz. 210, 215, 689 P.2d 153, 158 (1984) (although "certain basic decisions have come to belong to an accused," such as "[t]he ultimate decisions on whether to plead guilty, whether to waive jury trial, and whether to testify," "the power to decide questions of trial strategy and tactics," including what witnesses to call at trial, "rests with counsel"). An alleged violation of the general due process right of every defendant to a fair trial, without more, does not save that belated claim from preclusion.

¶29        Swoopes further asserts, however, that he "never waived his claim . . . to be present at all critical stages of the proceedings." As noted earlier, he maintains that any communication on factual issues between a trial judge and jury is such a critical stage and that, absent a valid, personal waiver, a defendant has a constitutional right to be present for such communication. Therefore, Swoopes argues, his claim is not precluded. A close review of the authorities on which he relies, however, demonstrates that this assertion is overbroad and conflates different constitutional bases for a defendant's right to be present.

¶30        As the state points out, quoting *United States v. Gagnon*, 470 U.S. 522, 526, 105 S. Ct. 1482, 1484 (1985), "there is a right to be present that is 'rooted to a large extent

19

in the Confrontation Clause of the Sixth Amendment." Additionally, the "right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." *Id.* This due process right, however, is limited, in that the "'presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" *Id.*, *quoting Snyder v. Massachusetts*, 291 U.S. 97, 108, 54 S. Ct. 330, 333 (1934).

¶31 Consistent with this Supreme Court authority, Arizona cases also have addressed a defendant's right to be present at various stages of his or her trial. In *State v. Christensen*, 129 Ariz. 32, 38, 628 P.2d 580, 586 (1981), our supreme court held that the appellant "did not have a constitutional right to be personally present in the court's chambers to discuss how to handle the jury's communications" to the trial judge during deliberations. In so holding, the court rejected the appellant's argument that "he had a federal constitutional right to be present in person, which right cannot be fulfilled by the presence of his counsel." *Id.* Rather, the court explained, "[t]he right to be personally present applies only to those proceedings in open court 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *Id., quoting Snyder*, 291 U.S. at 105-06, 54 S. Ct. at 332; *see also Dann*, 205 Ariz. 557, ¶¶ 52-73, 74 P.3d at 245-49 (in capital case, any error resulting from defendant's absence from multiple conferences before and during trial waived and not fundamental when no showing that his presence would have affected his ability to defend against charges or

20

how his absence prejudiced him); *Schackart*, 190 Ariz. at 255, 947 P.2d at 332 (on appeal after resentencing, supreme court did not address alleged violations of defendant's right to attend trial court proceedings because such issues "were not raised in his first appeal, and are therefore waived").[10] Based on these controlling authorities, and in view of the trial court's rejection of Swoopes's assertion that the trial judge had engaged in improper ex parte communications with the jury, we reject Swoopes's broad argument that a defendant's "presence is a right of constitutional magnitude that must be personally waived when the trial judge communicates his answer to a deliberating jury's question concerning a factual issue."

¶32        The Arizona cases on which Swoopes relies to support his argument to the contrary are distinguishable or inapposite. Some involved a defendant's Sixth Amendment Confrontation Clause right, for which he or she must personally waive the right to be present. *See State v. Perez*, 115 Ariz. 30, 31, 563 P.2d 285, 286 (1977) ("[A] defendant's right to be present at all stages of criminal proceedings . . . includes the right to be present

_____

[10]*See also State v. Lawrence*, 123 Ariz. 301, 307, 599 P.2d 754, 760 (1979) (defense counsel's presence when trial court answered questions of law from jury sufficient; any error arising from defendant's absence did not "affect[] any substantial constitutional rights"); *State v. Campbell*, 146 Ariz. 415, 418, 706 P.2d 741, 744 (App. 1985) (counsel could waive defendant's right to be present during reading of testimony and answering of jury questions, and any error subject to harmless error review); *State v. Pawley*, 123 Ariz. 387, 390, 599 P.2d 840, 843 (App. 1979) (when "defendant's legal position was represented and protected by the presence of counsel," no personal waiver required and no error arose from defendant's absence); *State v. Davis*, 117 Ariz. 5, 7-8, 570 P.2d 776, 778-79 (App. 1977) (although trial court erred in communicating with jury "without notice to the defense," error was waived by defendant's failure to raise it in motion for new trial).

when portions of the record are repeated at the request of the jury during their deliberations.") (citations omitted); *State v. Armenta*, 112 Ariz. 352, 353, 541 P.2d 1154, 1155 (1975); *State v. Sanchez*, 130 Ariz. 295, 299, 635 P.2d 1217, 1221 (App. 1981) ("[T]he reading of the testimony of a state's witness to the jury in [the defendant's] absence violated his Sixth Amendment right to confrontation."); *see also State v. Robin*, 112 Ariz. 467, 467, 543 P.2d 779, 779 (1975) (Confrontation Clause issue presented when jury asked questions involving factual issues and trial judge answered from his notes and recollection of relevant testimony). Again, however, neither federal nor Arizona law requires a defendant's personal waiver of the right to be present whenever a trial judge fields or responds to a jury's question, particularly when the alleged constitutional violation relates solely to a defendant's due process rights.

¶33        Although Swoopes repeatedly argues that the jury's question dealt with a "pivotal factual issue," he does not argue, nor do we find, that he had a Confrontation Clause right to be present when the trial judge answered the question. Judge Meehan did not read testimony back to the jury or provide it with any factual information in the case. *See Perez*, 115 Ariz. at 31, 563 P.2d at 286; *Armenta*, 112 Ariz. at 353, 541 P.2d at 1155; *Sanchez*, 130 Ariz. at 299, 635 P.2d at 1221. Rather, he merely provided a legal answer to the jurors' question, responding in writing: "The statement [about which the jury asked wa]s not admissible. Rely on your collective memories." That answer, although arguably suggesting that a statement might have existed, was consistent with the preliminary

22

instructions the trial judge had given the jury, that "[t]he only evidence that you are to consider is testimony that comes off the witness stand while the witness is under oath or other physical exhibits that may be admitted." The judge's response also conformed to the final instructions that the jurors "must determine the facts only from the evidence produced in Court" and that they should "disregard" inadmissible evidence. *Cf. State v. Jeffrey*, 203 Ariz. 111, ¶ 18, 50 P.3d 861, 865 (App. 2002) ("Juries are presumed to follow their instructions."). Thus, the trial judge's answer did not provide the jury with factual information, implicating the Confrontation Clause, but rather provided only legal instruction.

¶34 Similarly, this is not a case in which "a personal confrontation occur[red] between the court and the jury potentially touching upon the fundamental relationship between an accused, the court, and the people who judge him." *State v. Pawley*, 123 Ariz. 387, 390, 599 P.2d 840, 843 (App. 1979). In such a situation, "[f]airness requires that the defendant be given the chance to attend, and possibly participate in the proceedings against him before the jury; also important is the opportunity for the jury to observe the defendant throughout the proceedings." *Id.* Nor does this case involve a trial judge who actually entered the jury room to communicate with jurors. *See State v. Werring*, 111 Ariz. 68, 523 P.2d 499 (1974); *State v. Burnetts*, 80 Ariz. 208, 295 P.2d 377 (1956). Arizona courts have distinguished such occurrences from situations in which a trial judge merely answered jury questions. *See State v. Lawrence*, 123 Ariz. 301, 305-06, 599 P.2d 754, 758-59 (1979);

23

*Pawley*, 123 Ariz. at 389-90, 599 P.2d at 842-43; *State v. Davis*, 117 Ariz. 5, 7-8, 570 P.2d 776, 778-79 (App. 1977). Nothing in the record here suggests that any personal interaction occurred between the trial judge and the jury or that the jury would have had an opportunity to observe Swoopes had he been present.

¶35 Considering all the facts and circumstances surrounding the communications here, as we must, we also cannot say Swoopes had any due process right to be present absent a personal waiver by him. *See Pawley*, 123 Ariz. at 390, 599 P.2d at 843 ("The rule requiring that a defendant be given an opportunity to be present [for communications with jurors during deliberations] should not be mechanically applied to situations where the rationale for his presence does not exist."). Swoopes relies on several Ninth Circuit cases for a contrary conclusion, but we find that reliance misplaced. As the state points out, one of those cases, *Bustamante v. Eyman*, 456 F.2d 269 (9th Cir. 1972), was decided before the Supreme Court's pronouncements on this subject in *Gagnon*, 470 U.S. at 526, 105 S. Ct. at 1484. We also do not read the Ninth Circuit cases as broadly as Swoopes urges and, in any event, such authority is not controlling on Arizona courts. *State v. Montano*, 206 Ariz. 296, n.1, 77 P.3d 1246, 1247 n.1 (2003) ("We are not bound by the Ninth Circuit's interpretation of what the Constitution requires.").

¶36 We note that in all three Ninth Circuit cases cited by Swoopes, the court employed a harmless error analysis. *See generally Bustamante*, 456 F.2d at 274; *United States v. Rosales-Rodriguez*, 289 F.3d 1106, 1109-10 (9th Cir. 2002); *United States v.*

*Berger*, 473 F.3d 1080, 1096 (9th Cir. 2007). In *Bustamante*, the court spoke broadly of a defendant's right "to be personally present in the courtroom at every stage of his trial." 456 F.2d at 271. But it also noted that, although the proceedings in Bustamante's case had occurred "in the courtroom at a time when the most fundamental aspects of his trial took place," the Ninth Circuit had itself "refused to extend the right of presence to a conference in chambers." *Id.* at 273, *citing Stein v. United States*, 313 F.2d 518 (9th Cir. 1962). And, in discussing whether Bustamante could waive his right to be present, the court relied primarily on the fact that he was facing capital charges. *Id.* at 274. Thus, we cannot say *Bustamante* required a personal waiver of the right to be present in a context such as that presented here. *Cf. Lawrence*, 123 Ariz. at 306 n.1, 599 P.2d at 759 n.1 (noting and distinguishing Ninth Circuit's concern about the absence of defense counsel, uncertain tape recordings of instructions, and a new judge).

¶37 Likewise, although the court again employed broad language in addressing the right to be present in *Rosales-Rodriguez*, it did not require a personal waiver of that right. 289 F.3d 1109-11. And, in fact, the court noted that the presence of defendant's counsel would have been sufficient to cure the constitutional error relating to the delivery of a supplementary jury instruction in the defendant's absence. *Id.* at 1110.

¶38 Finally, in *Berger*, in which the judge held a private conference with the jurors, apparently in the jury room, the Ninth Circuit stated, "communication between the judge and jury outside of counsel's presence, without a proper waiver, violates a defendant's

25

right to due process of law." 473 F.3d at 1095. That right, the court also stated, could only be waived through a knowing, voluntary, and intelligent waiver. *Id.* Except arguably to the extent that such a rule might be based upon the trial judge's actual presence in the jury room, we cannot agree. *See Montano*, 206 Ariz. at n.1, 77 P.3d at 1247 n.1. Such a broad, unqualified rule is inconsistent with the Arizona and United States Supreme Court precedent discussed earlier and, as such, we are compelled to reject it. *See State v. Smyers*, 207 Ariz. 314, n.4, 86 P.3d 370, 374 n.4 (2004) ("The courts of this state are bound by the decisions of [the Arizona Supreme Court] and do not have the authority to modify or disregard [its] rulings."); *State v. Sherrick*, 98 Ariz. 46, 52, 402 P.2d 1, 5 (1965) (state courts bound by decisions of United States Supreme Court interpreting federal Constitution).

**¶39**      In sum, Swoopes has not established that "the particular right alleged to have been violated" is of "'sufficient constitutional magnitude' to require a knowing, voluntary and intelligent waiver for purposes of Rule 32.2(a)(3)." *Smith*, 202 Ariz. 446, ¶ 10, 46 P.3d at 1071, *quoting* former Rule 32.2(a)(3) cmt. The foregoing principles relating to a criminal defendant's right to attend all critical stages of the proceedings make clear to us that the right at issue here is not "such '"an inherently personal right of fundamental importance"'" that it must be personally and expressly waived." *State v. Espinosa*, 200 Ariz. 503, ¶ 8, 29 P.3d 278, 280 (App. 2001), *quoting State v. Smith*, 197 Ariz. 333, ¶ 13, 4 P.3d 388, 393 (App. 1999), *quoting Winters v. Cook*, 489 F.2d 174, 178 (5th Cir. 1973). Rather, the alleged error relating to Judge Meehan's response to the jury's note falls squarely within the

following observation in the comment to Rule 32.2: "For most claims of trial error, the state may simply show that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding, and that would be sufficient to show that the defendant has waived the claim." Thus, because the issue was not raised on appeal or in Swoopes's first Rule 32 proceeding, it is now precluded.[11]

## VI.

¶40        Swoopes argued below that Judge Meehan's "inaccurate answer to the jury's question . . . created fundamental error" that prejudiced him. In granting relief and ordering a new trial, the trial court apparently embraced that argument by finding "the unfortunate choice of wording in [Judge Meehan's] note [to the jury] inured to the prejudice of [Swoopes] and constituted fundamental error." The trial court's characterization of any error here as fundamental, however, does not change the result. By granting relief on this basis, the court implicitly found fundamental error to be tantamount to a claim of sufficient constitutional magnitude for purposes of Rule 32.2. The court's order suggests, too, that, notwithstanding the rules of preclusion, fundamental error may be raised at any time and, if found, compel relief in a successive post-conviction proceeding such as this.

---

[11]As noted earlier, the trial court did not find sufficient support for Swoopes's claim that there had been an improper ex parte communication between Judge Meehan and the jury. But even if Judge Meehan had responded to the jury's note without first contacting or consulting with Swoopes's trial counsel (Addis), that would not change the result. At most, that scenario might have constituted trial error but still would not implicate any right "of sufficient constitutional magnitude to require personal waiver by the defendant." *Smith*, 202 Ariz. 446, ¶ 12, 46 P.3d at 1071.

¶41 Nothing in Rule 32.2, the court comment thereto, or *Smith* can be read to support this notion. Not all error that is fundamental involves the violation of a constitutional right that can be waived only if the defendant personally does so knowingly, voluntarily, and intelligently. *See Espinosa*, 200 Ariz. 503, ¶ 8, 29 P.3d at 280 (finding claim that prosecutor had improperly withdrawn plea offer, violating due process rights and Distribution of Powers Clause of Arizona Constitution, did "not implicate constitutional rights of sufficient magnitude that they require a knowing, voluntary, and intelligent waiver before preclusion applies"; constitutional rights allegedly implicated not personal and need not be "personally and expressly waived"); *see also State v. Ward*, 211 Ariz. 158, ¶ 13, 118 P.3d 1122, 1126-27 (App. 2005) ("Although some constitutional rights may be waived without actual knowledge of the right involved, the right to a jury trial is a fundamental right and may not be waived without the defendant's knowledge, and absent a voluntary and intelligent waiver.").

¶42 Although it is true that by failing to raise an issue in the trial court, a defendant "forfeit[s] the right to obtain appellate relief unless [the defendant can] prove that fundamental error occurred," *State v. Martinez*, 210 Ariz. 578, n.2, 115 P.3d 618, 620 n.2 (2005), different principles come into play when Rule 32.2 is implicated. *See, e.g., Espinosa*, 200 Ariz. 503, ¶¶ 8, 10, 29 P.3d at 280, 280-81. Were we to find otherwise, an exception to the rule of preclusion for fundamental error that does not implicate a personal, constitutional right would swallow the rule. Moreover, if our supreme court had intended

28

that fundamental error be an exception to preclusion under Rule 32.2, the court presumably would have expressly said so in the rule itself or the comment thereto.

**¶43** In addition, any error here would not properly be characterized as fundamental. Fundamental error is "'error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial.'" *State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005), *quoting State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984). Although the trial judge's response to the jury's note arguably suggested Linda had made a statement before the physical lineup, the judge's response—"The statement is not admissible. Rely on your collective memories"—did not tell the jury what the statement was. In other words, the judge did not tell the jury that the purported statement "of a blemish" was that Linda had seen one before the lineup.[12] Additionally, we presume jurors follow the instructions given to them. *State v. Prince*, 204 Ariz. 156, ¶ 9, 61 P.3d 450, 452 (2003). And the judge in essence instructed the jury not to consider any such statement when he responded to the question.

---

[12]We acknowledge the statement by one of the jurors, provided in support of the petition for post-conviction relief, that the judge's answer suggested that victim Linda D. had mentioned before the physical lineup having seen a blemish on the suspect's face, and that otherwise the juror would have voted to find Swoopes not guilty. Aside from the fact that it is improper to "inquire[] into the subjective motives or mental processes which led a juror to assent or dissent from the verdict," Rule 24.1(d), Ariz. R. Crim. P., 17 A.R.S.; *State v. Covington*, 136 Ariz. 393, 396-97, 666 P.2d 493, 496-97 (App. 1983), the statement was submitted to support a claim that is precluded.

¶44        Finally, as we previously noted, the issue of identity was litigated extensively, both before and during trial. Swoopes filed a motion to suppress any identification of him by Mark, Randy, and Linda, claiming that the out-of-court identification process had been unduly suggestive because of Mark's and Randy's observation of him during the other trial and that this tainted Linda's identification of him before trial and any in-court identification of him by any of the victims. The judge denied the motion after a hearing held pursuant to *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), and Swoopes challenged that ruling on appeal. Linda testified at trial that when she had identified Swoopes in the live lineup, she did not know that Randy or Mark had already seen and identified him, nor did she know they had been told not to tell her they had identified Swoopes before the police presented her with the lineup. Linda identified Swoopes at trial and agreed when the prosecutor asked whether the person who had done the things she had described had a scar or blemish. The witnesses were thoroughly examined and cross-examined about the identification of Swoopes as the perpetrator. Indeed, Linda acknowledged that she had told the police detective who had interviewed her at the hospital that the gunman did not have a scar or blemish on his face. And she conceded she had been unable to pick Swoopes out of a photographic lineup. Defense counsel cross-examined Linda about her statement that Randy had never told her about having identified Swoopes during the trial in the other case before Linda picked him out of the live lineup.

30

¶45     In addition, as noted earlier, the trial court was not convinced there had been an improper, ex parte communication by the judge, nor are we. In any event, that claim, too, relates to trial error, is not fundamental, and is precluded. On the record before us, even assuming any error occurred, we cannot say the error was fundamental.

## VII.

¶46     In his response to the state's petition for review, Swoopes suggests the trial court did not decide his related claim of actual innocence made pursuant to Rule 32.1(h), which is excepted from the rule of preclusion. *See* Ariz. R. Crim. P. 32.2(b). Swoopes argues that he raised a colorable claim for relief under that subsection of the rule and is entitled, at the very least, to an evidentiary hearing on it. We disagree. The trial court rejected post-conviction relief on this ground when it expressly "denied . . . all of [Swoopes's] claims" other than those directly relating to Judge Meehan's response to the jury's note. And Swoopes has not established that trial error relating to his identification by witnesses, the trial judge's allegedly improper answer to the jury, or the prosecutor's allegedly incorrect and improper argument related to that identification amounts to a claim of actual innocence. This is not "clear and convincing evidence . . . that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt." Ariz. R. Crim. P. 32.1(h).

¶47     In his cross-petition for review, Swoopes contends the trial court abused its discretion in denying relief on his claims that the state had withheld exculpatory evidence

and improperly destroyed evidence over a decade after his trial. Swoopes also reiterates the claim of actual innocence, which we discussed above. The trial court addressed these additional claims in a manner permitting review by this court, and its resolution of those claims is correct. Therefore, seeing no purpose in rehashing the court's order here, we adopt its ruling. *See State v. Whipple*, 177 Ariz. 272, 274, 866 P.2d 1358, 1360 (App. 1993). Moreover, although the trial court rejected these claims on their merits, they were waived by Swoopes's failure to raise them on appeal or in his initial post-conviction proceeding, and they are precluded. *See* Ariz. R. Crim. P. 32.2(a). Finally, Swoopes did not establish the evidence in question was newly discovered as contemplated by Rule 32.1(e) or would support a claim of actual innocence under Rule 32.1(h).

## VIII.

¶48 The state's petition for review is granted. We grant relief on that petition by vacating the trial court's order granting Swoopes a new trial. Swoopes's cross-petition for review is granted as well, but because we conclude the trial court did not abuse its discretion in denying relief on the cross-petition, we deny relief.

_____
JOHN PELANDER, Chief Judge

CONCURRING:

_____

32

JOSEPH W. HOWARD, Presiding Judge


_____

GARYE L. VÁSQUEZ, Judge