NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

DAMON JOSEPH CALANDRA, *Petitioner*.

No. 1 CA-CR 23-0300 PRPC

FILED 3-19-2024

Petition for Review from the Superior Court in Yavapai County
No. V1300CR201980473
The Honorable Michael R. Bluff, Judge

**REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Yavapai County Attorney's Office, Prescott
By Glen M. Asay
*Counsel for Respondent*

Damon Joseph Calandra, Winslow
*Petitioner*

---

**MEMORANDUM DECISION**

Presiding Judge Daniel J. Kiley delivered the decision of the Court, in which Judge Kent E. Cattani and Judge D. Steven Williams joined.

---

**K I L E Y**, Judge:

¶1     Petitioner Damon Calandra petitions this court for review from the dismissal of his petition for post-conviction relief. We have considered the petition for review and, for the reasons stated, grant review but deny relief.

**FACTS AND PROCEDURAL HISTORY**

¶2     Calandra and his girlfriend, A.M., lived together in a trailer owned by A.M's father. One evening in 2019, after arguing for several hours, A.M. told Calandra to move out. When Calandra called the sheriff's office to determine if he was legally required to move out, a sheriff's deputy informed him that landlord/tenant laws entitled him to 30 days' notice before he could be required to vacate the premises. Calandra then told A.M. that he intended to stay for another month. Irritated, A.M. texted her boss, who promised to send her son and some others to help.

¶3     A.M. told Calandra that others were on their way, adding, "They're armed, and they're mad. They're mad at you." Calandra then picked up a knife and began waving it around and cutting the bedsheets. A.M. texted her boss to say she was afraid that Calandra might attack her. A.M. also began using her phone to record Calandra.

¶4     A.M.'s boss called the police. When a sheriff's deputy arrived at the scene, he saw Calandra holding something in his hand. He called out to him. Calandra dropped the object, later identified as a knife, and walked away. When the deputy spoke to A.M., she was shaking and appeared scared.

¶5     Calandra was charged with aggravated assault and disorderly conduct. At trial, the recordings that A.M. made of Calandra's conduct that night were presented to the jury. The responding officer and A.M. both testified. A.M. denied that she was frightened by Calandra's conduct that evening. When the prosecutor noted that she could be heard

in one of the recordings stating that she was "afraid," A.M. claimed that she was not afraid that Calandra would harm her or anyone else. Instead, she insisted, she was afraid that one of the people her boss sent to the scene might harm Calandra or that Calandra would stab one of them in self-defense.

¶6 The jury found Calandra guilty of aggravated assault and disorderly conduct. Before sentencing, the superior court dismissed the conviction for disorderly conduct after determining that the disorderly conduct offense was a lesser included offense of aggravated assault. The court sentenced Calandra to 7.5 years' imprisonment for aggravated assault. This court affirmed his conviction and sentence on direct appeal. *See State v. Calandra*, 1 CA-CR 21-0049, 2022 WL 905008 (Ariz. App. Mar. 29, 2022) (mem. decision). Calandra then filed a petition for post-conviction ("PCR") relief *in propria persona* after his PCR counsel found no colorable claims for relief. The superior court summarily denied the petition and Calandra now seeks review. We have jurisdiction pursuant to Arizona Rule of Criminal Procedure 32.16 and A.R.S. § 13-4239(C).

## DISCUSSION

### I. Claims that Calandra Could Have Raised on Direct Appeal Are Precluded

¶7 Any claim a defendant could have raised on direct appeal is precluded in a PCR proceeding. Ariz. R. Crim. P. 32.2(a); *See State v. Macias*, 249 Ariz. 335, 341, ¶ 20 (App. 2020). In his petition, Calandra argues, *inter alia*, that the superior court erred by (1) allowing A.M. to testify at trial because she was not a competent witness; (2) admitting A.M.'s prior out-of-court statements; and (3) enhancing Calandra's sentence in reliance on certified court records to establish his prior convictions without "corroborat[ion]" by witness testimony. Calandra also appears to challenge the sufficiency of the evidence, arguing that "all of the testimony at trial by [A.M.] was that" Calandra "only obtained a knife to defend himself," not to harm or threaten anyone else. Because these claims could have been raised on direct appeal, they are precluded, and we decline to consider them.

### II. Calandra's Cumulative Error Claim Is Not Cognizable Under Arizona Law

¶8 Calandra also argues that the alleged instances of ineffective assistance of counsel addressed below constitute cumulative error when considered in the aggregate. Arizona does not recognize the doctrine of

cumulative error outside the context of prosecutorial misconduct. *See State v. Hughes*, 193 Ariz. 72, 78-79, ¶ 25 (1998) (noting that Arizona "does not recognize the so-called cumulative error doctrine" except "when the court is evaluating a claim that prosecutorial misconduct deprived [the] defendant of a fair trial") (citation omitted). Thus, as a matter of law, Calandra is entitled to no relief on his claim of cumulative error by his own counsel.

## III.  Calandra's Claims of Ineffective Assistance of Counsel Fail

**¶9**        Calandra next raises four claims of ineffective assistance of trial counsel. To state a colorable ineffective assistance of counsel ("IAC") claim, a defendant must show that counsel's performance fell below objectively reasonable standards and that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *State v. Nash*, 143 Ariz. 392, 397 (1985). To show prejudice, a defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

**¶10**        "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (cleaned up). To do this, a defendant must show that counsel's performance fell outside the acceptable "range of competence" and failed to meet "an objective standard of reasonableness." *See id.* at 687-88 (citation omitted). "In short, reviewing courts must be very cautious in deeming trial counsel's assistance ineffective when counsel's challenged acts or omissions might have a reasonable explanation." *State v. Pandeli*, 242 Ariz. 175, 181, ¶ 7 (2017). A court may not grant relief on an IAC claim absent a showing that "counsel took an approach that no competent lawyer would have chosen." *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (cleaned up).

### A.     Failure to Move to Strike A.M. as a Witness

**¶11**        Calandra first argues that his trial counsel was ineffective by failing to "object" to A.M.'s testimony due to her purported lack of "competency to testify."

**¶12**        "Competency has to do with a witness'[s] capacity to observe, recollect and communicate the subject of the testimony." *State v. Roberts*, 139 Ariz. 117, 121 (App. 1983) (emphasis omitted). Under A.R.S. § 13-4061, "[i]n any criminal trial[,] every person is competent to be a witness."

¶13        Calandra does not cite anything in the record to support his claim that A.M. was not competent to testify. A review of the transcript of her trial testimony gives no cause to doubt her competency. Although A.M. testified that she was previously diagnosed with post-traumatic stress disorder ("PTSD") for reasons unrelated to Calandra, and further admitted that her inability to recall certain matters could be attributed to her PTSD, she was able to give substantive answers to most of the questions asked of her. In denying Calandra's PCR petition, the trial judge expressly found that "for most of her testimony, [A.M.] was able to readily recall the events of the evening." In any event, a witness's inability to recall information is a matter to explore on cross-examination but does not, by itself, establish that the witness is incompetent to testify. *See Roberts*, 139 Ariz. at 121 (noting that witness credibility relates to "whether the witness'[s] testimony does in fact accurately reflect what took place" and that a "witness may be deemed competent to testify" even if "not very credible"); *Zimmer v. Peters*, 176 Ariz. 426, 429-30 (App. 1993) (finding witness competent to testify although she admitted having "problems with her memory" and emphasizing the "notable distinction between competency and credibility").

¶14        Further, A.M. provided testimony that was favorable to Calandra, essentially recanting some of her statements to the deputy at the scene and denying that Calandra's actions that night caused her to fear for her safety. Calandra cannot have been prejudiced by his counsel's failure to seek to preclude testimony favorable to the defense, and the absence of prejudice is fatal to his IAC claim. *See State v. Bennett*, 213 Ariz. 562, 567, ¶ 21 (2006). Calandra is entitled to no relief on his IAC claim to the extent that it is based on his counsel's failure to try to prevent A.M. from testifying on grounds of incompetency.

## B.        Calandra Waived Claim Not Raised Below

¶15        Calandra next argues that his counsel was ineffective by failing to "conduct an adequate pretrial investigation and appropriately address [A.M.'s] mental health," which could have been done had counsel "sought consultation with a professional." "[A] reasonable pretrial investigation" that included "consult[ing] with a professional to appropriately identify all the issues for trial," Calandra contends, "would unarguably have had a profound effect on the proceedings."

¶16        A petition for review may not raise issues or claims that were not first presented to the superior court. *See* Ariz. R. Crim. P. 32.16(c)(2)(B) (requiring a petition for review to contain "a statement of issues the trial

court decided"); *State v. Andersen*, 177 Ariz. 381, 385 (App. 1993) (noting that claim not raised in PCR petition is not "subject to appellate review"); *see also State v. Swoopes*, 216 Ariz. 390, 403, ¶¶ 40-42 (App. 2007) (holding that no review for fundamental error exists in a PCR proceeding). In his petition for review, Calandra never raised his "inadequate preparation" claim in his PCR petition. Although Calandra argued below that counsel should have retained a *testifying* expert to explain A.M.'s alleged "mental illness and its complex aspects" to the jury, he never argued that counsel was deficient for failing to retain a *consulting* expert as part of his trial preparation. Calandra's failure to argue below that his counsel was deficient in not consulting a mental health expert while preparing for trial warrants denying relief on this claim. *See State v. Romero*, 1 CA-CR 14-0859, 2016 WL 6802981, at *2, ¶ 7 (Ariz. App. Nov. 17, 2016) (mem. decision) (declining to address arguments PCR defendant raised "in her petition for review that she did not raise in her petition for post-conviction relief in the superior court.

**¶17** And even if Calandra could be said to have properly preserved the claim that trial counsel was deficient by failing to consult with a mental health expert prior to trial, he would be entitled to no relief. A defendant asserting an IAC claim based on trial counsel's inadequate trial preparation must "show how [he] may have been prejudiced by any purported shortcomings." *State v. Britson*, 130 Ariz. 380, 383-84 (1981). Although Calandra asserts, in conclusory terms, that consultation with a mental health expert would "unarguably" have led to a different result, he does not explain what a mental health expert might have told trial counsel that would have helped him in defending this case. He does not suggest, for example, that a mental health expert would have opined that A.M.'s PTSD diagnosis affected the credibility of her testimony. And since, as noted above, much of A.M.'s testimony was favorable to Calandra, we see no basis on which to conclude that retaining a mental health expert to challenge her credibility would have benefited Calandra's defense in any event. *See State v. Denz*, 232 Ariz. 441, 445, ¶ 11 (App. 2013) ("[C]ounsel may opt not to pursue a particular investigative path" that is "unnecessary in light of counsel's chosen trial strategy."). We reject Calandra's wholly speculative claim that he was somehow prejudiced by trial counsel's failure to consult with a mental health expert while preparing for trial. *See State v. Rosario*, 195 Ariz. 264, 268, ¶ 23 (App. 1999) (noting the showing of prejudice needed to obtain relief on an IAC claim "must be that of a provable reality, not mere speculation").

### C. Failure to Request Instructions on Lesser-Included Offenses

¶18      Calandra next argues that his counsel was ineffective by failing to request jury instructions on lesser-included offenses of aggravated assault. As charged in this case, a person commits aggravated assault if the person intentionally places another person in reasonable apprehension of imminent physical injury using a deadly weapon or dangerous instrument. A.R.S. § 13-1204(A)(2). Calandra argues that counsel should have requested instructions on attempted aggravated assault and simple assault as lesser-included offenses of the charged offense.[1]

¶19      Calandra's defense at trial was that he did nothing wrong. In her testimony, A.M. supported Calandra's defense, denying that Calandra placed her in apprehension of any injury at all, much less in reasonable apprehension of imminent physical injury from a dangerous instrument. In closing argument, Calandra's counsel asserted that the jury should believe A.M.'s testimony. This was a reasonable strategy given A.M.'s testimony, which, if the jurors believed, would have resulted in a "not guilty" verdict. Accordingly, counsel's decision not to request instructions on lesser-included offenses was a matter of trial strategy that does not support an IAC claim. *See State v. Noleen*, 142 Ariz. 101, 108 (1984) (holding that counsel's failure to request a self-defense instruction in murder case did not constitute IAC because defense was based on "the theory of accidental homicide . . . rather than self-defense"); *see also State v. Bigger*, 251 Ariz. 402, 408, ¶ 12 (2021) ("[M]atters of trial strategy and tactics are committed to defense counsel's judgment and generally cannot serve as the basis for an IAC claim.") (cleaned up); *State v. Valdez*, 160 Ariz. 9, 14 (1989) ("Defense counsel's determinations of trial strategy, even if later proven unsuccessful, are not ineffective assistance of counsel.").

### D. Failure to Request an Instruction on Voluntary Intoxication

¶20      As his final IAC claim, Calandra argues that his counsel was ineffective by failing to request a jury instruction on voluntary intoxication. Because "intent is a necessary element of the offense," Calandra contends, a voluntary intoxication instruction would have allowed the jury to find a "necessary element for conviction to be missing."

---

[1] As noted above, Calandra was convicted of the lesser-included offense of disorderly conduct, but that count was later dismissed.

¶21 Under A.R.S. § 13-503, "[t]emporary intoxication" from voluntarily consuming alcohol "is not a defense for any criminal act or requisite state of mind." Because voluntary intoxication was not a defense to the charged crimes, counsel could not have been prejudicially deficient in failing to ask that the jury be instructed on it. *Cf. Andersen*, 177 Ariz. at 386 (rejecting claim that trial counsel was deficient by not requesting self-defense instruction where defendant testified that he shot victim by accident and did not present "the slightest evidence supporting a self-defense instruction"). We deny relief on this claim as well.

## CONCLUSION

¶22 For the above reasons, we grant review and deny relief.



AMY M. WOOD • Clerk of the Court
FILED: AA

8