570 P.2d 776

The STATE of Arizona, Appellee,

v.

Hubert DAVIS, Appellant.

No. 2 CA–CR 991.

Court of Appeals of Arizona,
Division 2.

June 10, 1977.

Rehearing Denied July 28, 1977.

Review Denied Sept. 20, 1977.

Bruce E. Babbitt, Atty. Gen. by Philip G. Urry, Asst. Atty. Gen., James G. Wezelman, Certified Third-Year Law Student under Rule 28(e), Tucson, for appellee.

William Messing, Tucson, for appellant.

## OPINION

HOWARD, Chief Judge.

Appellant was originally charged with two counts of exhibiting a deadly weapon not in self-defense in violation of A.R.S. § 13–916 as amended, and two counts of assault with a deadly weapon in violation of A.R.S. § 13–249(A) and (B) as amended. He was convicted by a jury of the assault charges and placed on probation for a period of ten years on the condition that he spend one year in the Pima County Jail.

Appellant's difficulties began on Christmas Eve, 1975 when he went to the Elk's Club on South Meyer Street in Tucson. He was accompanied by Mrs. Helen Lewis with whom he was living. Joy Washington, Mrs. Lewis' daughter, was at the club with friends as were Aaron Jones and Charlene Dartman. A scuffle ensued between Aaron Jones and appellant which resulted in appellant being on the floor with Aaron Jones on top of him. The fight was broken up and when Mr. Jones stood up, appellant also got to his feet drawing a handgun from his pocket. He pointed it at Mr. Jones and threatened to kill him. Appellant was disarmed and escorted to his pickup truck.

Appellant departed and went to the home of an old friend, Marshall Reed. He told Reed that he was going to kill Reed's grandson, Glenn, who had arrived at the Elk's Club after the scuffle. He also said he was going to kill Joy Washington and ". . . some other nigger." At that time appellant was armed with a rifle and a pistol. He told Marshall Reed and his wife "I'm killing tonight." Mr. Reed tried to persuade appellant not to carry out his threats and they both went across the street to the residence of Joy Washington. Appellant went to the door, kicked it twice, and when it would not open, he broke the glass out of a window with his rifle butt. Seeing that no one was there, they started to get into appellant's car to go down to the Elk's when appellant spotted Charlene Dartman in a car with Clarence White. Appellant stopped the car, pointed his rifle

at Clarence White, threatened him and ordered Charlene Dartman out of the car. Charlene Dartman got out of the car and ran away, Clarence White drove off, and appellant fired two rifle shots into the air.

When they got to the Elk's Club appellant got out of the car, went into the bar and told Marshall Reed to drive his car around the block and pick him up. Mr. Reed waited outside for about 30 minutes and when appellant did not return, drove appellant's car back to his own house. There he saw appellant who came up to him and asked him for the keys to his car. In the meantime, Aaron Jones, Joy Washington and Glenn Reed had returned to Joy's house where they observed that the window had been broken. They went to Marshall Reed's house to call the police where they were informed by Mrs. Reed that appellant had been there earlier and was threatening to kill Glenn and some others. Aaron Jones, Joy Washington and Glenn Reed went around the neighborhood looking for appellant and when they could not find him, returned to Joy's house where they saw appellant and Marshall Reed. Some words were exchanged between Aaron Jones and appellant. Aaron, Glenn and Joy started to go into Joy's house when Aaron turned and saw that appellant had gone over to his truck which was parked at the Reed residence and was pointing a rifle at him. Appellant fired a shot at Aaron who in return fired two shots, one of which struck appellant in the leg.

The police officers who had been called in relation to the broken window were in the area and responded immediately. Aaron was initially arrested for the incident but after a police investigation appellant was arrested. A police officer on the scene said he smelled appellant's rifle and it had been recently fired.

Appellant claims reversible error in the admission of the testimony of Joy Washington. Her mother, on cross-examination, denied that the day after the shooting she told Joy that appellant said he was going to kill her and everybody who was at

her home when the shooting occurred. In rebuttal, Joy testified to the contrary. Appellant contends that this rebuttal testimony was improper impeachment on a collateral matter. Assuming arguendo, appellant's characterization of Joy's testimony is correct, we are unable to find reversible error. The admission or exclusion of testimony as to immaterial or collateral matters for the purpose of impeachment is left to the sound discretion of the trial court. *State v. Little,* 87 Ariz. 295, 350 P.2d 756 (1960). The vice of the cross-examination and rebuttal testimony was that it allowed the state to get before the jury testimony not otherwise admissible. Threats made by a defendant *prior* to the crime are relevant on the issue of whether he in fact engaged in the criminal conduct. *Hurley v. Territory,* 13 Ariz. 2, 108 P. 222 (1910); *State v. Patterson,* 4 Ariz.App. 265, 419 P.2d 395 (1966). In the case sub judice the trial court carefully instructed the jury that Joy Washington's testimony was admitted for the limited purpose of impeachment and was not evidence that appellant did in fact make such a threat. Furthermore, there was abundant evidence that prior to the shooting appellant made threatening remarks. If error occurred, it was harmless.

■ On appeal, appellant claims ineffective assistance of counsel. In the absence of a showing that counsel was so ineffective that the proceedings were reduced to a farce or sham, we do not interfere. *State v. Wilcynski,* 111 Ariz. 533, 534 P.2d 738 (1975). We have examined the record and are unable to agree with appellant's contention. His attorney called ten community and civic leaders who testified to appellant's good reputation in the community for peacefulness. In addition, defense counsel put appellant on the witness stand and conducted a vigorous cross-examination of the state's witnesses.

■ The third contention raised by appellant relates to written communications between the trial judge and the jury without notice to the defense. The first communication concerned an instruction dealing with the charges involving exhibiting of a deadly weapon. The second set of communications dealt with the instruction on assault with a deadly weapon. These communications were in writing, carefully dated and signed by the trial judge. The communication involving the assault with a deadly weapon charge was as follows. The jury asked:

"Is the charge of assault with a deadly weapon predicated on Davis having fired the first shot? Anyone firing a shot? Or does just pointing the weapon by Davis constitute assault with a deadly weapon?"

The judge replied:

"The state claims that the alleged crime of assault with a deadly weapon on Aaron Jones, Count IV, occurred at the Marshall Reed residence. The Court cannot answer your specific questions more directly than this. You must apply the law which has been given to you in the instructions with the facts as you determine them and in that way attempt to decide that Count. You must consider all of the instructions previously given to you."

The state claims that appellant has waived any consideration of this issue by his failure to assert the error below. Appellant's response is that failure to raise the issue in his motion for a new trial demonstrates the ineffectiveness of counsel since, if the issue had been raised, reversal by the trial court was mandatory under Arizona law.

In *State v. Burnetts,* 80 Ariz. 208, 295 P.2d 377 (1956), we find the court stating:

". . . [W]here the communication concerned the case and not merely extraneous matters, we are of the opinion that the defendant is not required to show actual prejudice." 80 Ariz. at 212, 295 P.2d at 379.

Similar language also appears in *State v. Werring,* 111 Ariz. 68, 523 P.2d 499 (1974) and *State v. Robin,* 112 Ariz. 467, 543 P.2d 779 (1975). Both *Burnetts* and *Werring* involved the actual physical intrusion by the judge into the juryroom where he apparently communicated orally to the jury on both issues of fact and law. These cases

make it clear that there is an irrebuttable presumption of prejudice when such conduct is engaged in by the trial judge. In *Robin,* supra, the jury sent questions to the judge which dealt with issues of fact and the judge answered from his notes and his recollection of the relevant testimony. Again, under such circumstances it is clear from the *Robin* decision, that such communication is reversible error and no actual prejudice need be shown.

While the conduct of the trial judge here was certainly improper, we do not believe that the foregoing Arizona cases mandate reversal. The judge's communication regarding the instruction as to exhibiting a deadly weapon not in self-defense concerned a matter of law only and appellant was found not guilty on the exhibiting charges. As for the communication concerning the assault with a deadly weapon, it was no more than a recitation of the charge against appellant and an instruction to follow the instructions which the court had previously given. We do not believe that such communication, although improper, was of the calibre involved in *Burnetts, Werring* and *Robin.* Nor do we believe that the communication actually prejudiced or tended to prejudice appellant in respect to a substantial right. How is it reversible error for the trial court to tell the jury to follow the court's instructions? We believe that if we hold otherwise we would fly directly in the face of Art. 6, § 27, of the Arizona Constitution which declares, "No cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done."

We therefore conclude that although any error in the communications to the jury was waived when appellant failed to raise it in his motion for a new trial, cf. *State v. Peters,* 60 Ariz. 102, 131 P. 814 (1942), failure to raise the matter in the motion for new trial did not constitute ineffective assistance of counsel.

Affirmed.

HATHAWAY and RICHMOND, JJ., concur.

## ON MOTION FOR REHEARING

Supplemental Opinion—Rehearing Denied

HOWARD, Chief Judge.

On rehearing affidavits have been filed with this court by the trial judge and by trial counsel for the state and defense. These affidavits state that the trial judge showed the jury's questions to both counsel and the written answer was agreed to by defense counsel. Trial defense counsel in his affidavit stated that he informed appellate defense counsel of this fact but appellate defense counsel claims trial defense counsel is mistaken and that appellate defense counsel had no knowledge of what occurred below. Apparently no court reporter or clerk was present when these events took place.

The state asks us to consider the affidavits in order to correct the record pursuant to Rule 31.8(h), Rules of Criminal Procedure. The propriety of a motion to correct the record *after* issuance of the appellate court's opinion was addressed by Division One of this court in *State v. Esquer,* 26 Ariz.App. 572, 550 P.2d 240 (1976) where under analogous circumstances, the motion to correct the record was held to be untimely. We agree with Division One.

We do not agree, however, with appellant's contention that we erred in our original opinion.

The motion for rehearing is denied.

HATHAWAY and RICHMOND, JJ., concur.