583 P.2d 263

**The STATE of Arizona, Appellee,**

v.

**Attila Vince STREYAR, Appellant.**

**No. 2 CA–CR 1219.**

Court of Appeals of Arizona, Division 2.

May 31, 1978.

Rehearings Denied June 29, 1978.

Review Denied July 18, 1978.

John A. LaSota, Jr., Atty. Gen. by Philip G. Urry, Asst. Atty. Gen., Tucson, for appellee.

John M. Neis, Pima County Public Defender by Donald H. Bayles, Jr., Asst. Public Defender, Tucson, for appellant.

## OPINION

RICHMOND, Chief Judge.

After appellant was arrested in Acton, Mass., for a violation of Massachusetts firearms laws, he confessed to the commission of armed robberies in Tucson and was returned to Arizona for prosecution. The Pima County Grand Jury returned an indictment for four counts of armed robbery, one of which was dismissed with prejudice at trial prior to the commencement of testimony because of the state's inability to proceed on that charge. Although the propriety of admitting the confessions in evidence is not disputed, their voluntariness was in issue and the jury was properly instructed in that regard. He was found guilty on two counts, not guilty of the other, and received two concurrent prison sentences of five to 12 years.[1]

■ The jurors deliberated approximately one hour on the afternoon the case was submitted to them and then were sent home. They returned the following morning but had not rendered verdicts at 4 p. m. At that time, without the assistance of counsel or notice to appellant, the trial judge drafted and sent into the jury room the following note:

> "MR. FOREMAN WOULD YOU PLEASE SEND ME A NOTE STATING THE NUMBER OF BALLOTS YOU HAVE TAKEN AND THE VOTE ON THE LAST ONE. DO NOT SAY WHETHER THE VOTE IS GUILTY OR NOT GUILTY.
>
> "NUMBER OF BALLOTS _____
> "VOTE ON LAST BALLOT _____
> "/s/ W. E. DRUKE"

---

1. At the time of sentencing, appellant also pled guilty to a separate charge of armed robbery, waived time for sentencing, and received an additional concurrent prison term of five to 12 years, which is not challenged on this appeal.

The note was returned with information reflecting that two ballots had been taken and the vote was 9 to 3. Ninety minutes later the jury returned its verdicts.

The propriety of a communication to the jury requesting a numerical division is a question of first impression in Arizona. We believe that such communication, in the absence of the defendant and without notice to him, should not be condoned.

Such an inquiry was held by the Supreme Court to be reversible error *per se* in *Brasfield v. United States,* 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926):

> "We deem it essential to the fair and impartial conduct of the trial that the inquiry itself should be regarded as ground for reversal. Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious, although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned."

47 S.Ct. at 135–136.

The federal rule has been adopted as one of constitutional proportion in New Mexico. *See State v. Aragon,* 89 N.M. 91, 547 P.2d 574, 580 (App.1976). Various other states, however, have not regarded the *Brasfield* rule as mandated by due process, and have refused to follow it in the absence of additional conduct or comments by the trial judge suggesting coercion. For a discussion of cases dealing with the question, see Annot., Inquiry as to Numerical Division of Jury, 77 ALR3d 769.

Potentially prejudicial communications between the trial judge and jury, other than in open court in the presence of the defendant and counsel, have mandated reversal in Arizona. *See State v. Burnetts,* 80 Ariz. 208, 295 P.2d 377 (1956); *State v. Werring,* 111 Ariz. 68, 523 P.2d 499 (1974); *State v. Robin,* 112 Ariz. 467, 543 P.2d 779 (1975); *cf. State v. Davis,* 117 Ariz. 5, 570 P.2d 776 (App.1977). The possibility of coercive effect in the query at issue brings it within that rule.

Because of a possible re-trial, an analysis of appellant's other contentions is appropriate.

■ 1. Circumstances justified appellant's detention by the Acton police, which led to discovery of the bank bag and pistol admitted in evidence, and the trial court properly refused to suppress them. *See State v. Rhodes,* 19 Ariz.App. 505, 508 P.2d 764 (1973); *State v. Ruiz,* 19 Ariz.App. 84, 504 P.2d 1307 (1973). An officer on patrol at about 11 p. m. saw motor vehicle headlights at the rear of a parking lot near two banks that had been closed since noon. There were no open businesses in the immediate area. On investigating, he found a car with out-of-state license plates, with appellant lying in the back seat. Appellant produced registration papers in the name of Les Martin, but said he had no driver's license because it had been stolen. While a check was being made on the vehicle's registration, the officer continued to shine his flashlight around the car "because it seemed the vehicle was in the wrong place at that time of night." He then saw a blue bank bag that appellant apparently was trying to conceal with his feet, opened the car door and observed what appeared to be a pistol protruding from the bag.

■ 2. The trial court did not abuse its discretion in denying appellant's motion to sever the various counts for trial. 17 A.R.S. Rules of Criminal Procedure, Rule 13.-3(a)(3); *State v. Henderson,* 116 Ariz. 310, 569 P.2d 252 (App.1977). In his statement to an Acton detective, appellant described a *modus operandi* common to each of the robberies. Further, the fact that appellant

was acquitted on one count establishes that severance was unnecessary under Rule 13.-4(a).

■ 3. The trial court did not err in determining that appellant's spring-operated BB pistol was a gun for the purposes of A.R.S. § 13–643(B).[2] We decline to equate "gun" with "firearm" where the legislature has not done so. Moreover, as noted in *State v. Alexander*, 108 Ariz. 556, 567, 503 P.2d 777, 788 (1972), the statute in question "is written in the disjunctive: ' * * * gun or deadly weapon * * *.' Although a gun can be a deadly weapon, the statute requires only a gun and there is no requirement that it be loaded."

The judgments of guilt on counts one and four of the indictment are reversed and the sentences thereon vacated; the case is remanded for a new trial on those counts.

HATHAWAY, J., concurring.

HOWARD, Judge, dissenting.

I disagree with the majority opinion in two respects. First, I do not believe that the note sent to the jury poses any possibility of a coercive effect. I do not believe we need follow *Brasfield v. United States*, supra, and am unable to agree with its rationale. I cannot understand how a mere inquiry as to the numerical nature of the jury's division or as to the number of ballots taken, or both, has a tendency to be coercive. Courts which follow *Brasfield* permit the judge to inquire of the jury whether it believes it might reach a verdict after further deliberations. See *Kersey v. State*, 525 S.W.2d 139 (Tenn.1975). I am unable to perceive the difference between such an inquiry and that of asking the jury as to how they stand numerically. In either situation the jurors themselves know how they stand. In the former situation, however, although the jurors know the extent of their division, the judge does not. How this changes the situation and results in coerciveness is inexplicable. There are situations when further comment by the trial judge does tend to be coercive upon the jury. For example, in *People v. Wilson*, 390 Mich. 689, 213 N.W.2d 193 (1973) the trial court, after hearing that the jury divided 11 to 1, stated, "Well, that is not very far from a verdict." The court rightly held that the trial court's characterization of the jury as being "not very far from a verdict" was impermissibly coercive with respect to the single reluctant juror. In *Taylor v. State*, 17 Md.App. 41, 299 A.2d 841 (1973) the jury informed the judge that it was divided 11 to 1 and a juror commented "It's up to the 1." The judge then stated that he agreed and that it was up to the one juror to change. The appellate court correctly held that the remarks of the trial judge were patently coercive upon the minority juror. However, that is not the situation here. To me the court in *Sharplin v. State*, 330 So.2d 591 (Miss.1976) made sense when it stated:

"We conclude that *Brasfield* was not grounded in a specific constitutional provision that has subsequently been applied to the states through the Fourteenth Amendment, but was announced as a rule of procedure to be followed in the federal courts. We decline to follow this federal procedural rule because we believe that receipt of the jury's numerical division serves a legitimate purpose consonant with the trial judge's broad powers of control over the conduct of a trial: it enables the trial judge to ascertain the likelihood of agreement among the jurors. We hold therefore that the mere request and receipt of the jury's numerical division without reference to guilt or innocence does not coerce the jury and is not error. We believe that the possibility of coercion, if any, lies in the trial judge's conduct and comments after he receives the division, that is, whether the judge merely affords the jury additional time to deliberate or whether he attempts to force a verdict by suggestive comments or coercive measures." 330 So.2d at 596.

---

**2.** § 13–643(B) provides in part: "Robbery committed by a person *armed with a gun or deadly weapon* is punishable by imprisonment in the state prison . . . ."

I believe that our holding in *State v. Davis*, supra, applies and that although the trial court should not have communicated to the jury without the presence of the defendant, such communication does not constitute reversible error.[1]

I also disagree with the majority's analysis of the meaning of the word "gun" as used in A.R.S. Sec. 13–643(B). I am convinced that the term "gun" as used in the statute refers to a firearm. I do not believe that the case of *State v. Alexander*, supra, is of any value since the question in that case was whether or not the gun had to be loaded and the statute obviously does not make such a requirement. The reason that the legislature does not require the gun to be loaded is the inordinate burden it would place upon the state to prove that the gun was in fact loaded. A.R.S. Sec. 13–643 states:

"A. Robbery shall be punished by imprisonment in the state prison for not less than five years.

B. Robbery committed by a person armed with a gun or deadly weapon is punishable by imprisonment in the state prison, for the first offense, for not less than five years, for a second offense, not less than ten years, for a third or subsequent offense, not less than twenty years nor more than life imprisonment, *and in no case, except for a first offense committed by a person armed with a deadly weapon other than a gun,* shall the person convicted be eligible for suspension or commutation of sentence, probation, pardon or parole until such person has served the minimum sentence imposed.

C. Any person convicted of robbery armed with a deadly weapon other than a gun who is placed on probation in accordance with the terms of this section shall upon sentencing, be committed to the department of corrections for not less than thirty nor more than sixty days. . ."
(Emphasis added)

It seems clear that the legislature considered a robbery committed with a gun to be the most serious armed robbery of all, since it prohibited the giving of probation for first offense robbery by a person armed with a gun, whereas if it is a first offense and the person is armed with a deadly weapon other than a gun, there can be probation. Therefore, the legislature balanced the dangerous character of the gun against the requirement that it be loaded and opted for no requirement that it be loaded. It also seems clear, from perusal of the statute, that the gun to which it refers is one which is a deadly weapon, and that its wording is cast in the terms of "gun or deadly weapon" in order to allow probation for first offenders who are armed with deadly weapons other than a gun. The result of the majority decision is that a person who uses a popgun in a robbery is guilty of robbery while armed with a gun. I do not conceive a popgun or a BB gun to be a "gun" within the meaning of the statute. The legislature was equating "gun" with a deadly weapon and this does not include a BB gun. There was no proof here that the BB gun was a deadly weapon.

I would therefore modify the judgment of guilt on Count One of Cause # A–31571 to a conviction of robbery only. Since the trial court sentenced appellant to concurrent prison terms on all three counts of robbery for a term of not less than five nor more than 12 years, I do not believe that it is necessary to remand Count One for resentencing and would therefore affirm the judgments and sentences as modified.

---

1. The judge's inquiry here is infinitely less coercive than the "Baumgartner" or dynamite instruction which is sanctioned by the federal courts. See *Shaffer v. Field*, 484 F.2d 1196 (9th Cir. 1973).