NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CHRISTOPHER T. DAY, an unmarried individual, *Plaintiff/Appellant,*

*v.*

JESSIE FRANCES ARMENDT, *Defendant/Appellee.*

No. 1 CA-CV 15-0264
FILED 5-30-2017

Appeal from the Superior Court in Maricopa County
No. CV2013-092659
The Honorable Katherine M. Cooper, Judge

**AFFIRMED**

COUNSEL

The Collins Law Firm, PLLC, Mesa
By Ernest Collins, Jr.
*Counsel for Plaintiff/Appellant*

Riviere Law Group, PLLC, Phoenix
By Roger W. Riviere
*Counsel for Defendant/Appellee*

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Kenton D. Jones joined.

**W I N T H R O P**, Presiding Judge:

¶1 Plaintiff, Christopher T. Day, appeals the trial court's judgment in favor of Defendant, Jessie Frances Armendt, on Day's negligence complaint seeking damages arising from a car accident. Day raises several issues, which we address in turn. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY[1]

¶2 On April 9, 2012, Day was involved in a multi-car accident on the I-10 freeway in Phoenix. Day sued Armendt, alleging she had negligently caused the accident and resulting damages. Day asserted Armendt had triggered a five-car chain-reaction accident when Armendt's vehicle (the No. 1 car) skidded into the car directly in front of her (the No. 2 car), which rear-ended a car driven by William Murray (the No. 3 car), which rear-ended the car driven by Day (the No. 4 car), which rear-ended a fifth car (the No. 5 car).

¶3 Within minutes after the accident, despite stopping briefly, the drivers of the Nos. 1 (Armendt), 2, and 5 cars all drove away without exchanging insurance or other information with any other driver. Neither the driver of the No. 2 car nor the driver of the No. 5 car could later be identified. Arizona Department of Public Safety ("DPS") officers, however, located Armendt through her vehicle license number and, a few hours after the accident, interviewed her at her home. Armendt admitted her vehicle had struck the No. 2 car and she had then driven away, but explained she had left the accident scene only after the driver of the No. 2 car had told her he did not wish to exchange information, advised her he had not struck the No. 3 car as a result of being rear-ended by her, and then drove away.

¶4 Day filed a negligence complaint against Armendt on March 15, 2013, and Armendt defended by denying she was negligent, or had caused or contributed to the portion of the accident involving Day. Instead, she asserted her collision with the No. 2 car was a separate accident that occurred when her vehicle bumped into the No. 2 car immediately after an accident involving either the Nos. 2 through 5 or 3 through 5 cars.

---

[1] In general, we view the facts and inferences therefrom in the light most favorable to affirming the verdict. *See Paul Schoonover, Inc. v. Ram Constr., Inc.*, 129 Ariz. 204, 205, 630 P.2d 27, 28 (1981).

**¶5** A September 2013 compulsory arbitration hearing resulted in the arbitrator finding in favor of Armendt. Day appealed the arbitration decision and moved to set the matter for a trial *de novo* before a jury. As relevant to this appeal, at trial, Day testified and presented testimony from DPS Officer Steven Jarol (the officer who arrived on the scene shortly after the accident and later tracked down and interviewed Armendt), and Murray (the driver of the No. 3 car). Officer Jarol testified he had prepared a brief police report of the accident based on his personal observations of the damage to the cars driven by Day, Murray, and Armendt and statements he obtained from each of those drivers. He did not take any photographs of the vehicles or make any measurements.

**¶6** Day's witnesses acknowledged they had not seen Armendt cause the accident, and none of Day's witnesses could state with certainty that Armendt had done so. Indeed, although Officer Jarol testified he believed at the time he made his report that the accident was an "accordion domino type" of accident, with "one hitting two, hitting three, hitting four, hitting five," he acknowledged his belief rested on what Day, Murray, and Armendt had told him and what he had observed, and that he had not been able to speak to the missing drivers. And, on cross-examination, Day himself conceded he had not seen "what was going on behind [him]," and agreed it was a "fair statement" for defense counsel to say that "all you know is you were hit from behind."

**¶7** The jury returned a unanimous verdict, finding in favor of Armendt. The trial court issued a signed judgment reflecting the jury's verdict and awarded Armendt taxable costs in the amount of $1,530.20 plus $19,629.00 as sanctions pursuant to Rule 77 of the Arizona Rules of Civil Procedure. The court also denied Day's motion for new trial.

**¶8** We have jurisdiction over Day's appeal pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) (2016).[2] *See also* A.R.S. § 12-2102(B) (2016) ("If a motion for new trial was denied, the court may, on appeal from the final judgment, review the order denying the motion although no appeal is taken from the order.").

---

[2] We cite the current version of all statutes unless changes material to our analysis have occurred since the events leading to the underlying lawsuit.

## ANALYSIS

### I. Trial Court's Order Striking Day's Expert Witness

**¶9** Day first argues the trial court abused its discretion when, before trial, it granted Armendt's motion to strike his proposed expert accident reconstruction witness under former Arizona Rule of Civil Procedure 77(g)(1).[3] We disagree.

**¶10** We review a trial court's ruling on discovery and disclosure matters and the admissibility of evidence for an abuse of discretion. *Link v. Pima Cty.*, 193 Ariz. 336, 338, ¶ 3, 972 P.2d 669, 671 (App. 1998). We will not disturb the court's ruling absent a clear abuse of discretion and resulting prejudice. *Rimondi v. Briggs*, 124 Ariz. 561, 565, 606 P.2d 412, 416 (1980). Similarly, we review a trial court's denial of a motion for new trial for an abuse of discretion. *First Fin. Bank, N.A. v. Claassen*, 238 Ariz. 160, 162, ¶ 8, 357 P.3d 1216, 1218 (App. 2015). We defer to the court's factual findings unless they are clearly erroneous, and we review *de novo* the interpretation and application of statutes and rules. *See id.* "A trial court abuses its discretion if it commits an error of law." *Id.* (citation omitted).

**¶11** Rule 77 governs the appeal of cases initially subject to compulsory arbitration. Former Rule 77(g)(1) required a party appealing from an arbitration award to file simultaneously with the notice of appeal a list of witnesses and exhibits "intended to be used at trial that complies with the requirements of" Arizona Rule of Civil Procedure 26.1.[4] *See generally Cosper v. Rea ex rel. Maricopa Cty.*, 228 Ariz. 555, 556, ¶¶ 5-7, 269 P.3d 1179, 1180 (2012) (discussing disclosure obligations under former Rule 77(g)(1)); *see also* current Rule 77(f)(2), (4). In turn and as relevant here, Rule 26.1(a)(6) requires a party to disclose "the substance of the facts and

---

[3] Effective January 1, 2017, Rule 77 was amended. Former subsection (g), entitled "Discovery and Listing of Witnesses and Exhibits," was amended, and the amended version, entitled "Discovery and Listing of Witnesses and Exhibits on Appeal," may be found at subsection (f) of current Rule 77. The amendments to Rule 77, although noted, do not affect our resolution of this appeal, and we generally refer to the version of the rule in effect at the time of the trial court's rulings throughout this decision.

[4] The language of Rule 26.1 was also amended, effective January 1, 2017. Again, the amended language does not affect our analysis.

opinions to which the expert is expected to testify, a summary of the grounds for each opinion," and the expert witness's qualifications.

¶12            Day appealed the arbitration award on October 25, 2013, and simultaneously filed a list of witnesses and exhibits. Although Day's witness list identified the subject expert (Michael S. Broughton, Accident Reconstruction Associates) as a trial witness, Day did not make any of the substantive disclosures required by Rule 26.1(a)(6). Accordingly, the trial court correctly found that Day had failed to satisfy the disclosure requirements of Rule 77.

¶13            Day next argues that even if he failed to comply with Rule 77, the trial court abused its discretion in not allowing him to supplement his trial witnesses with the expert for good cause under former Rule 77(g)(4). *See also* current Rule 77(f)(6). Former Rule 77(g)(4) (now current Rule 77(f)(6)) authorized a trial court to allow a party who failed to comply with Rule 77 to file a supplemental list of witnesses and exhibits if that party demonstrated good cause. *See also Cosper*, 228 Ariz. at 557, ¶ 12, 269 P.3d at 1181. As we understand his argument, Day argues he demonstrated good cause because Armendt failed to timely disclose relevant information to him before and after the arbitration hearing, and accordingly, without this information, his expert could not render an expert opinion about the cause of the accident before the expiration of Rule 77's disclosure deadline requirements. In making this argument, Day principally focuses on a recorded statement Armendt gave to her insurance carrier. To address Day's argument, we examine the relevant pretrial procedural history of this case.

¶14            On April 11, 2012—two days after the subject accident—Day provided a recorded statement to Farmers Insurance Company ("Farmers"), Murray's insurance carrier. On April 11 and June 15, 2012, Murray provided recorded statements to Farmers and to Progressive Insurance Company ("Progressive"), Armendt's insurance carrier. Armendt also provided a recorded statement to Progressive.[5] In her statement, Armendt disclosed that, approximately one week before the accident involving Day, she and her car had been in another accident involving a friend's vehicle (the "prior accident"); she had damaged the hood of her car in the prior accident; in the accident involving Day, she had "clipped" the car in front of her (the No. 2 car) when the driver of that car slammed on his brakes; the driver of the car in front of her told her he had

---

[5]            The record does not reflect when Armendt gave her recorded statement.

not hit anyone and he did not need her information, and he then drove off; and because "[t]here didn't seem to be any new damage to [her] car," she drove off as well. She also disclosed she had replaced the hood of her car with a hood from a local junkyard, and discarded the damaged hood at the junkyard.

¶15 On June 11, 2013, Armendt provided Day with her initial Rule 26.1 Disclosure Statement. In the statement, Armendt denied being negligent in any manner, and denied she had caused, contributed to, or was involved in the accident involving Day. Armendt also stated she was "not aware of any recorded statements," but "reserve[d] the right to supplement any additional recorded statements if discovered."

¶16 On July 8, 2013—two days before Day and Murray were deposed—Armendt prepared her First Supplemental Rule 26.1 Disclosure Statement. That statement also failed to disclose the existence of the various recorded statements of Day, Murray, or Armendt.

¶17 On July 10, 2013, Armendt deposed Day and Murray. During the depositions, Day's counsel was given the recorded statements of Day and Murray, and given the opportunity to ask questions of Day and Murray.[6] The deposition testimony of Day and Murray was not materially different from what they had said in their recorded statements.[7]

---

[6] The record does not reflect that Day ever attempted to depose Armendt, even though Armendt had denied causing Day's accident.

[7] Day argued in his subsequent (November 12, 2013) motion to strike Armendt's answer and for Rule 37 sanctions that Armendt's failure to disclose the recorded statements "allowed [Armendt] the 'element of surprise' and precluded [Day] and Mr. Murray, who was represented by counsel at the deposition[,] from being properly prepared to answer questions about the recorded statements." Nevertheless, neither counsel for Day or Murray objected on this basis at the depositions or expressed on the record surprise at the recorded statements' existence. Further, Day was not asked about his recorded statement at his deposition, and Murray stated he had prepared for his deposition in part by reviewing his recorded statement to Farmers, but he had not reviewed the recorded statement he gave to Progressive; however, he reviewed that statement at his deposition and agreed that it accurately described his recollection of the events related to the accident.

¶18     On July 12, 2013, Armendt prepared her Second Supplemental Rule 26.1 Disclosure Statement, and disclosed the recorded statements of Day and Murray, but not her own recorded statement. On July 15, 2013, Day mailed his "Plaintiff's First Set of Requests for Production of Documents" to Armendt, requesting among other things, "[t]ranscriptions of all oral, written, or recorded statements by any party or witness regarding any matter which is the subject of this case."

¶19     On July 19, 2013, Armendt submitted her Third Supplemental Rule 26.1 Disclosure Statement. Armendt attached the recorded and transcribed statements of Day and Murray, but stated she was "not aware of any additional recorded statements."

¶20     On August 30, 2013, Armendt submitted her "Arbitration Memorandum" to the arbitrator. In her memorandum, she again denied causing or contributing to Day's accident. Although she acknowledged her car had "made contact with [an] unknown driver that left the scene of the accident," she asserted there was no evidence that her accident, that is, her contact with the unknown driver, had "resulted in a chain of events that resulted in the impact that involved [Day's] vehicle." She also argued Day could not produce any evidence she had caused the accident involving Day:

> Both [Day] and Mr. Murray have already been deposed and neither one of them is able to testify what events or even order of events took place between the vehicle being driven by Ms. Armendt and the vehicle being driven by the unknown driver [of the No. 2 car]. Additionally, [Day] has not presented any witnesses or experts that can establish the sequence of impacts.
>
> . . . .
>
> It is undeniable that neither [Day] nor Mr. Murray will be able to testify about what happened behind them as they have already testified under oath that they did not see what occurred. Lastly, any police report regarding the sequence of events is merely hearsay as the officer did not observe what occurred and solely took the information from the parties that remained at the scene of the accident. As such, [Day] will be unable to meet his burden of proof in this matter.

¶21     The arbitrator held the arbitration hearing on September 3, 2013. The record does not contain a transcript of the evidence presented at the hearing, although it appears from the arbitrator's "Notice of Decision"

that only Day and Armendt testified at the hearing. According to what Day later told the trial court, at the arbitration hearing, Armendt testified she had been in the prior accident, and the damage to her car that Officer Jarol saw when he interviewed her had been caused in the prior accident, not in the accident with Day. Day also told the court Armendt had not disclosed these facts to him before the arbitration hearing, and that he had not received a copy of Armendt's recorded statement until September 5, 2013, when he received Armendt's Fourth Supplemental Rule 26.1 Disclosure Statement in the mail,[8] and Armendt responded to his July 2013 document requests.[9]

¶22 The arbitrator found in Armendt's favor and mailed his "Notice of Decision" to the parties and the court administrator's arbitration department on September 3, 2013.[10] The arbitrator later entered the arbitration award in Armendt's favor, dated October 6, 2013.[11]

¶23 On September 16, 2013, Day issued interrogatories and document requests to Armendt, asking for information and documents that would confirm her assertion she had been involved in the prior accident.

¶24 On October 25, 2013, before Armendt's responses to the discovery requests were due, Day appealed the arbitration decision, moved to set the matter for trial, and filed his list of witnesses (which included his expert witness, Broughton) and exhibits. Day also supplemented his Rule 26.1 disclosure statement with his Second Supplemental Rule 26.1 Disclosure Statement, wherein he disclosed that Broughton would "give testimony about how the accident occurred, the forces involved, etc."

---

[8] Armendt's Fourth Supplemental Rule 26.1 Disclosure Statement was mailed September 3, 2013.

[9] The record does not contain a copy of Armendt's responses to Day's July 2013 document requests; according to Day, Armendt claimed she mailed her responses on August 25, 2013.

[10] The arbitration department received the decision on September 6, and it was filed with the superior court on September 9, 2013.

[11] The arbitration award is not contained in the record on appeal, but Day included it as an appendix to his reply brief and Armendt did not move to strike it.

¶25 On October 31, 2013—the day Armendt's responses to Day's discovery were due—instead of timely providing responses to Day's discovery requests, Armendt's counsel wrote a letter to Day's counsel asking for a more detailed description of Broughton's opinion in accordance with Rules 26.1 and 77. Armendt finally responded to Day's September 2013 discovery requests on November 18, 2013,[12] but was unable to produce any information or documents that would substantiate her assertion she had been in the prior accident.

¶26 On November 19, 2013, Armendt moved to strike Broughton as an expert witness, based on Day's noncompliance with Rules 26.1 and 77. Two days later, counsel for Armendt deposed Officer Jarol. In his deposition, Officer Jarol acknowledged he had not personally observed the April 9, 2012 accident, and that everything he generated in his report had come from "somebody else." He further conceded he had no evidence to support his belief that the accident involving Day occurred as the result of a "domino effect" beginning with the No. 1 car hitting the No. 2 car.

¶27 On December 9, 2013, Day sent to Armendt his Third Supplemental Rule 26.1 Disclosure Statement, wherein he disclosed that his expert witness, Broughton, would testify that he agreed "with Officer Jarol's accident report that [Armendt] struck the vehicle in front of her (Vehicle 2) and pushed that vehicle into Mr. Murray's vehicle, which Mr. Broughton believes was still moving at an unknown rate of speed. Vehicle 2 pushed Mr. Murray's vehicle into [Day's] vehicle." Day also acknowledged that "Mr. Broughton is unable to estimate the speeds or forces involved in this collision."

¶28 On January 10, 2014, two weeks before oral argument on Armendt's motion to strike, Day filed his expert's report with the court. After explaining that he had reviewed Officer Jarol's report, all of the depositions, recorded statements, and photographs of the cars driven by Day, Murray, and Armendt, the expert (Broughton) explained he agreed with Officer Jarol: "The investigating officer, based on his training and experience as well as his investigation of the collision, concluded that the chain reaction began when Ms. Armendt struck the rear of the vehicle ahead of her, pushing it into Mr. Murray's vehicle. [I] would concur that, based on reviewing all of the available data, that this is, in fact, a chain reaction rear end collision." Notably, Broughton did not present any specific analysis or calculations relevant to the case. Instead, he

---

[12] The record does not contain a copy of Armendt's discovery responses, but she did not dispute the timing of her responses.

summarized statements contained in the materials he had reviewed, noted that Armendt's recorded statement had been taken after she had replaced the hood of her car, and stated that because the photographs of Armendt's car produced in the case had been taken after she had replaced the hood, Day had "been denied the ability to inspect or photograph [Armendt's] vehicle, or to see any photographs showing [Armendt's] vehicle, in the condition observed by [Officer Jarol]."

¶29        At the conclusion of the January 24, 2014 oral argument on the motion to strike (and competing motions for sanctions), the trial court granted Armendt's motion to strike Day's expert witness, Broughton.[13]

¶30        Based on the foregoing procedural history, we agree with Day that Armendt failed to timely disclose her recorded statement before the arbitration hearing. We also agree with Day that, if Armendt had done so, he would have known before the arbitration hearing that she was asserting she had been in the prior accident and had replaced the hood of her car. And, we agree with Day the record reflects that not until the arbitration hearing did he learn Armendt was asserting the damage to her car that Officer Jarol saw when he interviewed her had been caused in the prior accident, not in the accident with Day. But, we disagree that these late disclosures and Armendt's additional failure to timely respond to Day's discovery requests after he appealed, *see supra* ¶ 24, deprived Day of information his expert needed to reach an expert opinion about the cause of the accident before the Rule 77 deadline expired, and thus, we disagree that Day had shown good cause under (former) Rule 77(g)(4). *See* current Rule 77(f)(6).

¶31        As of the date of the arbitrator's decision and certainly no later than September 5, 2013, when Day received Armendt's recorded statement, *see supra* ¶ 21, Day knew Armendt was asserting she had been in the prior accident, had replaced the hood of her car, and that the damages to her car as seen by Officer Jarol had been caused in the prior accident. Day also knew from Armendt's recorded statement, that "evidence of what [her] car looked like immediately after the accident [was unavailable] because [the car had] already been repaired." Further, even if we assume Day did not know as of September 5, 2013, that Armendt could not produce any information or documents supporting her assertion that she had been in the prior accident, *see supra* ¶ 24, this material would not have assisted Day's

---

[13]        The trial court also granted Day's motion to strike Armendt's offer of judgment as a sanction against Armendt. *See* Ariz. R. Civ. P. 68.

expert in determining who had caused the accident involving Day.[14] Indeed, when Day's expert finally issued his report, he did not even refer to Armendt's post-appeal discovery responses. Finally, in his report, Day's expert simply agreed with Officer Jarol, and reached no independent conclusions regarding the cause of the accident based on any information Armendt had failed to disclose before September 5, 2013. As noted, Day did not appeal the award until October 25, 2013. Given this and the information available to Day as of September 5, 2013, we cannot say the trial court abused its discretion in finding Day had not demonstrated good cause under Rule 77.

¶32 In denying Day's motion for new trial, the trial court addressed the argument Day has essentially raised on appeal—that it deprived him of a fair trial when it struck his expert. The trial court found Day had not been deprived of a fair trial, and we agree with its analysis:

> Day fails to demonstrate that he was deprived of a fair trial after the Court precluded his accident reconstructionist. Day focuses on the reason for his delay in disclosing opinions. Before arbitration, Armendt did not disclose that she had been in a prior accident. She disclosed this information for the first time at arbitration. After arbitration, she failed to timely respond to Day's discovery regarding the prior accident. On September 16, Plaintiff disclosed an accident reconstructionist, Broughton, but with only a general description of Broughton's anticipated testimony: "He will give testimony about how the accident occurred, the forces involved, etc."[15] Day also sent Armendt discovery regarding the earlier accident. He argues that, because Armendt

---

[14] As counsel for Armendt explained to the trial court during oral argument on the motion to strike, "an accident [r]econstructionist['s] purpose and use is to help define what happened in this accident. Whether or not he had any information from a prior accident is so irrelevant, it makes no sense. He doesn't need that information with respect to the other accident."

[15] As previously noted, *see supra* ¶ 24, Day submitted this information in his Second Supplemental Rule 26.1 Disclosure Statement—dated October 25, 2013—the same day he appealed from the arbitration decision, moved to set the matter for a trial *de novo* before a jury, and filed his list of witnesses and exhibits.

delayed in responding, he could not timely disclose Broughton's opinions.

The reason for Day's delay is not the issue. The issue for the Court now is whether the expert's absence deprived Day of a fair trial. Day fails to show that it did. . . .

. . . [G]iven what the record does show regarding Broughton's opinions, the Court cannot find that Broughton's absence deprived Day of a fair trial. According to Day's Response to the Motion to Strike, Broughton would have testified "that he agrees with Officer Jarol's accident report that [Armendt] struck the vehicle in front of her (Vehicle 2) and pushed that vehicle into Mr. Murray's vehicle, which Mr. Broughton believes was still moving at an unknown rate of speed. Vehicle 2 pushed Mr. Murray's vehicle into [Day's] vehicle." . . . Officer Jarol testified at trial. He gave his conclusion regarding the accident based on his investigation. Since Broughton would have agreed with Jarol, and Jarol testified, the jury heard the essence of Broughton's opinion. Jarol covered it. If there was more to Broughton's anticipated testimony, it is not before the Court.

¶33 The record supports the trial court's analysis. Although we do not condone Armendt's disclosure and discovery failures, the trial court did not abuse its discretion in concluding Day had failed to comply with Rule 77's disclosure requirements.

*II. Attorneys' Fees*

¶34 Day argues the attorneys' fees awarded to Armendt—who was represented by her insurer's in-house counsel—as a sanction under former Rule 77(f) were without foundation or legal basis and were not reasonable and should not have been awarded. We disagree.

¶35 "An appellate court is somewhat unsuited for the fact-finding inquiry which is frequently necessary to properly determine reasonable fees for legal services rendered." *Granville v. Howard*, 236 Ariz. 29, 32, ¶ 13, 335 P.3d 551, 554 (App. 2014) (quoting *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 189, 673 P.2d 927, 933 (App. 1983)). Accordingly, "[a]n award of attorney fees is left to the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 18, 99 P.3d 1030, 1035 (App. 2004)

(citations omitted). "We will not disturb the trial court's discretionary award of fees if there is any reasonable basis for it." *Id.* (citations omitted).

¶36        The imposition of sanctions in a civil action is separate and exclusive from the statutory recovery of costs under A.R.S. § 12-341 as a successful party to a civil action. *See generally Davis v. Disc. Tire Co.*, 182 Ariz. 571, 574-75, 898 P.2d 520, 523-24 (App. 1995). Former Rule 77(f), Ariz. R. Civ. P., provided in part as follows:

> If the judgment on the trial *de novo* is not more favorable by at least twenty-three percent (23%) than the monetary relief, or more favorable than the other relief, granted by the arbitration award or other final disposition, the court shall order the deposit to be used to pay, or that the appellant pay if the deposit is insufficient, the following costs and fees unless the court finds on motion that the imposition of the costs and fees would create such a substantial economic hardship as not to be in the interests of justice:
>
> . . . .
>
> (2) to the appellee, those costs taxable in civil actions together with reasonable attorneys' fees as determined by the trial judge for services necessitated by the appeal . . . .[16]

¶37        The language of former Rule 77(f) was mandatory—it stated the court "shall" order payment[17]—unless "a substantial economic hardship" existed. "The purpose of [former] Rule 77(f) is similar to that of Rule 68(g)—to encourage settlement and avoid needless litigation."

---

16        *Compare* former Ariz. R. Civ. P. 77(f) (above), *with* current Ariz. R. Civ. P. 77(h) ("If the judgment on the trial de novo is not at least 23 percent more favorable than the monetary relief or other type of relief granted by the arbitration award, the court must order that the deposit on appeal be used to pay the following costs and fees: . . . (2) to the appellee, those costs taxable in civil actions together with reasonable attorney's fees as determined by the trial judge for services necessitated by the appeal . . . . If the deposit is insufficient to pay those costs and fees, the court must order that the appellant pay them, unless the court, on motion, finds that imposing costs and fees would create a substantial economic hardship that is not in the interests of justice.").

17        Similarly, current Rule 77(h) states the court "must" order payment.

*Bradshaw v. Jasso-Barajas*, 231 Ariz. 197, 199, ¶ 7, 291 P.3d 991, 993 (App. 2013) (citation omitted). "Both rules provide a common-sense approach to analyzing the offer of judgment, arbitration award, final judgment and any sanctions." *Id.* at 200, ¶ 9, 291 P.3d at 994. A non-exclusive list of factors trial courts should consider when making such awards under Rule 77 includes: (1) whether the appeal from arbitration was filed in good faith or was pursued to delay the proceedings, unduly burden the opposing party, or coerce capitulation based upon superior financial resources; (2) how close the appealing party came to meeting the twenty-three percent standard; (3) the amount in controversy; (4) whether post-arbitration litigation could have been avoided or settled; (5) whether failure to improve on the arbitration award by the required percentage may be attributable to evidence introduced at the trial *de novo* of post-arbitration damages; (6) the amount of fees the requesting party is obligated to pay his or her lawyer; and (7) whether the requested fees were necessarily incurred or whether it appears that some fees were generated because of the prospect of a fee-shifting award under Rule 77. *Granville*, 236 Ariz. at 32, ¶ 11, 335 P.3d at 554. No single factor governing a request for attorneys' fees at a trial *de novo* following compulsory arbitration is dispositive, and the weight to be given each factor will vary from case to case. *Id.* at ¶ 12.

¶38            In addressing Armendt's motion for sanctions and costs, the trial court made clear it had considered the non-exclusive list of factors provided in *Granville*, explaining in part as follows:

> The Court finds that Armendt is entitled to recover fees and costs as sanctions pursuant to Rule 77. [Day] appealed the arbitrator's defense verdict. The jury found in favor of Armendt also. [Day] did not do 23% better at trial, as required by Rule 77 to avoid the imposition of sanctions.

> [Day] does not present facts to support a claim of financial hardship.

> [Day] objects to [d]efense counsel's hourly rate but provides no evidence to support the assertion that the rate is unreasonable.

> The Court finds that the billing ledger attached to the Revised Carrow Verification is sufficiently detailed to show the services rendered and that the charges were reasonable.

> While not argued by Day, the Court has evaluated whether 90.7 hours is reasonable to prepare a case that went

to arbitration for a two-day trial. After arbitration, Armendt deposed Officer Jarol. The deposition was reasonable in light of [Day's] disclosure of Jarol as a witness regarding the accident. [Armendt] also provided some discovery responses and filed a motion for summary judgment. Both sides filed motions to strike and motions in limine. None of this work was unreasonable, although, in the Court's view, both sides applied a large effort to a case that should have settled. Even so, Day pressed the case to trial by filing an appeal, and Armendt did not act unreasonably in preparing for trial.

Armendt's costs are reduced [to] $1,535.20. The arbitration hearing transcript is not a recoverable expense under A.R.S. § 12-332.

**¶39** We find no abuse of the trial court's discretion. Although Day argues Armendt was represented by her insurer's in-house counsel as part of their contractual relationship under Armendt's insurance policy, that was but one factor for the trial court to consider, and Day has cited no authority precluding the trial court from awarding attorneys' fees on this basis. The trial court considered Day's failure to improve on the arbitration award, the potential financial hardship claimed by Day, the reasonableness of the charges, including counsel's hourly rate and the time expended, and the sufficiency of the detail in the billing ledger. The court also considered Day's response opposing the request, as evidenced by the court's decision to reduce Armendt's awardable costs by the amount of the arbitration hearing transcript, as well as the sides' failure to settle.[18] On this record, the

---

[18] Moreover, Day's reliance on *Lacer v. Navajo County*, 141 Ariz. 392, 687 P.2d 400 (App. 1984), as a basis for requiring Armendt's counsel to file an amended "Motion for Sanctions and Costs" is misplaced. *Lacer*, which involved attorneys' fees sought by a governmental organization (Navajo County) after successfully defending a lawsuit arising out of contract, dealt with a fee award under A.R.S. § 12-341.01, which specifically states in part that the amount awarded "not exceed the amount paid or agreed to be paid." *Id.* at 396, 687 P.2d at 404 (quoting A.R.S. § 12-341.01(B)). The attorneys' fees statute in this case is A.R.S. § 12-133(I)(2) (2016), which does not contain the same restriction. *See State ex rel. Corbin v. Tocco*, 173 Ariz. 587, 593-94, 845 P.2d 513, 519-20 (App. 1992) (distinguishing *Lacer* and concluding the trial court did not err in applying a prevailing market rate rather than a cost-based rate for an attorneys' fees request). Further, Armendt's counsel provided the trial court with a supporting verification

trial court acted well within its discretion in awarding sanctions pursuant to former Rule 77(f).

### III. Motion In Limine – Nonparty at Fault

**¶40** Day argues that, although the trial court granted his motion in limine precluding Armendt's nonparty at fault designation, counsel for Armendt violated the court's order by arguing in closing that a nonparty, the "unknown driver" of the No. 2 car—and not Armendt—was at fault for causing the accident.

**¶41** Courts generally give counsel wide latitude in closing argument, allowing counsel to comment on the evidence and argue all reasonable inferences from it. *Ritchie v. Krasner*, 221 Ariz. 288, 303-04, ¶ 54, 211 P.3d 1272, 1287-88 (App. 2009) (citations omitted). "We will grant a new trial because of attorney misconduct in only the most serious cases in order to prevent a miscarriage of justice." *Id.* at 303, ¶ 52, 211 P.3d at 1287 (citation omitted). "The trial judge is in the best position to 'decide whether [] misconduct materially affected the rights of the aggrieved party.'" *Id.* (citations omitted). "We will not overturn a trial court's decision absent an abuse of discretion." *Id.* at ¶ 51 (citation omitted).

**¶42** Under the comparative fault system, a defendant in a negligence action is liable only for his or her own fault, and the finder of fact is required to determine the relative percentages of fault among all those who contributed to the injury. *Bowen Prods., Inc. v. French*, 231 Ariz. 424, 427 n.3, ¶ 10, 296 P.3d 87, 90 n.3 (App. 2013) (citing *Scottsdale Ins. Co. v. Cendejas*, 220 Ariz. 281, 285, ¶ 18, 205 P.3d 1128, 1132 (App. 2009); A.R.S. § 12–2506(B)). The purpose of the rule requiring defendants to give notice of any nonparty at fault[19] is "to identify for the plaintiff any unknown persons or entities who may have caused [an alleged] injury in time to allow the plaintiff to bring them into the action before the statute of limitations expires." *Scottsdale Ins. Co.*, 220 Ariz. at 286, ¶ 18, 205 P.3d at 1133 (quoting *LyphoMed, Inc. v. Superior Court*, 172 Ariz. 423, 428, 837 P.2d 1158, 1163 (App. 1992)).

**¶43** In this case, on May 17, 2013—several months before the September 2013 arbitration hearing—Armendt filed a Notice of Non-Party

---

and reasonable basis for its hourly rates and overall request for attorneys' fees.

19      *See* Ariz. R. Civ. P. 26(b)(5).

at Fault, designating Murray, the driver of the No. 3 car, as a nonparty at fault. Armendt later prepared an Initial Rule 26.1 Disclosure Statement—dated June 11, 2013—in which she denied "that she was negligent in any manner or that she caused, contributed or was involved in the accident involving [Day's] vehicle," and asserted that Day's damages were the result of the negligence of Murray or some other party. After deposing both Day and Murray on July 10, 2013, Armendt withdrew her Notice of Non-Party at Fault regarding Murray, and instead—on August 6, 2013—named as a nonparty at fault "[t]he anonymous driver of the vehicle that struck the rear of Mr. Murray's vehicle."

¶44        Later, on July 22, 2014—several months before the trial in superior court—Day moved in limine to preclude Armendt from asserting an affirmative defense that the "anonymous driver" of the No. 2 car was a nonparty at fault. *See generally* A.R.S. § 12-2506 (2016). At the November 13 final trial management conference, Day argued that Armendt had admitted she did not know how the accident involving Day's vehicle occurred and could not identify the driver of the No. 2 car, "[s]o, there are absolutely no facts to support the non-party at fault." After taking the matter under advisement, the trial court granted Day's motion in limine, reasoning as follows: "The Notice of NPAF fails to state facts supporting the unidentified driver's alleged fault. Defendant's anticipated testimony that she saw smoke from the unknown driver's car before she hit that car is not a factual basis on which a jury could reasonably find the unknown driver to be at fault."

¶45        On the first day of trial, Murray testified he had been rear-ended by the No. 2 car, and the driver of that car had driven away. Murray did not, however, otherwise know how the accident happened. At the beginning of the second day of trial, during a discussion regarding final jury instructions, defense counsel requested a comparative fault line on the verdict form for the driver of the No. 2 car. Day objected, arguing the court had already "ruled that they could not name [the No. 2 car's driver] as a non-party at fault." The court then responded: "Okay. Yeah, right. I -- let me just say that we'll do the final, final on the jury instructions after all the evidence is in. So let me hear the rest of the evidence, and I know I made that ruling based on what I understood the record was going to be. But why don't we wait to finalize that till after we're done? Right now I don't see it. Okay."

¶46        Armendt later testified that, on April 9, 2012, she was driving on the I-10 freeway when she saw smoke, heard screeching, and became aware of a collision in front of her. She "slammed on the brakes," but before

she could fully stop, she "clipped" the bumper of the car in front of her (the No. 2 car). She did not hit any other vehicle, and the driver of the No. 2 car assured her he had not hit the car in front of him (the No. 3 car) as a result of Armendt clipping his (No. 2) car. Armendt believed the prior collision and her collision were "just two separate accidents." During cross-examination, Day's counsel questioned Armendt about first naming Murray as a nonparty at fault, and later naming the driver of the No. 2 car as being at fault. At the conclusion of Armendt's testimony, the trial court ruled Armendt had not put forth facts sufficient for a comparative fault instruction or "a line on the verdict form," but further ruled "[t]hat doesn't mean you can't argue that" in closing argument: "You can still make the argument if you want to." During closing argument, defense counsel did not specifically mention the term "nonparty at fault," but did argue "we believed this unknown driver had something to do with [Day's accident] and everything points to that." Defense counsel also focused on who bore the burden of proof, and closed his argument by stating: "Have they proven their case or did they say, 'The Defendant did not prove car number two caused the accident.' Remember whose burden of proof it is and what the evidence shows. The evidence shows that this was car number two."

¶47        Even assuming Day has not waived this issue by failing to timely object or clearly raise it in his motion for new trial, *see Ritchie*, 221 Ariz. at 303, ¶ 51, 211 P.3d at 1287; *State v. Davis*, 117 Ariz. 5, 8, 570 P.2d 776, 779 (App. 1977), we find no error. The evidence presented at trial supported a reasonable inference that Armendt had not caused the accident involving Day, and the jury agreed, returning a unanimous finding in her favor (and thus concluding that, as to Day, she was not a tortfeasor). In the context of this case, the trial court's decision to not give a comparative fault instruction or include "a line on the verdict form" for allocating fault makes perfect sense. Armendt defended by arguing she was not at fault, and the trial court's ruling limited Armendt's ability to argue percentages of fault, which she did not do, but allowed her to argue someone else had caused the accident involving Day and that Day had failed to present sufficient evidence for the jury to find her at fault. Such an argument went toward whether Armendt could be found liable, rather than to an allocation of fault. Moreover, defense counsel's arguments did not violate the trial court's orders. Instead, counsel's arguments fell squarely within the parameters of the trial court's rulings, and the trial court did not abuse its discretion in

allowing defense counsel to argue reasonable inferences from the evidence presented.[20]  *See Ritchie*, 221 Ariz. at 303-04, ¶ 54, 211 P.3d at 1287-88.

    *IV.    Witness William Murray*

**¶48**        Day argues the trial court abused its discretion by partially quashing the subpoena requiring Murray to appear for trial and allowing Murray to instead appear telephonically.  We find no abuse of discretion.

**¶49**        The trial court retains discretion to control the courtroom and trial proceedings.  *Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 91, ¶ 33, 977 P.2d 807, 813 (App. 1998).  "We will not interfere in matters within [the trial court's] discretion unless we are persuaded that the exercise of such discretion resulted in a miscarriage of justice or deprived one of the litigants of a fair trial."  *O'Rielly Motor Co. v. Rich*, 3 Ariz. App. 21, 27, 411 P.2d 194, 200 (1966).

**¶50**        In this case, Murray, who did not live in Maricopa County at the time of trial and was not a party to the case, was served with a subpoena requiring his attendance at trial.  Murray filed an expedited motion to quash the subpoena, raising numerous arguments, including that:  (1) the subpoena had not been served in accordance with Rule 45(d)(1), Ariz. R. Civ. P., and A.R.S. § 12-303 (2016) because Day had not tendered the mileage fee; (2) the subpoena required him to incur substantial travel expense, especially in light of his belief that the probative value of his testimony was low and because he no longer owned a car; (3) he was not afforded adequate time to prepare for his appearance because the subpoena was served one week before trial; and (4) the subpoena subjected him to undue burden.  Murray also sought attorneys' fees and costs as sanctions. Day filed a response, requesting oral argument and Rule 11 sanctions[21] against Murray's counsel, and arguing Murray was a crucial witness; the failure to serve the mileage fee was an oversight and would be remedied; Day's counsel had also been given little prior notice of the trial due to the case's placement in the court's case transfer system, which led to the short notice given to Murray; Murray would not incur substantial travel expense

---

[20]      Moreover, the trial court did not allow the jury to find comparative fault.  Instead, the jury was instructed it had to either find Armendt at fault or not, and the jury unanimously found in favor of Armendt.  We presume the jury followed the instructions given it.  *See State v. LeBlanc*, 186 Ariz. 437, 439, 924 P.2d 441, 443 (1996).

[21]      *See* Ariz. R. Civ. P. 11(c).

and had not provided an affidavit indicating he did not own or have access to a vehicle; and Murray's argument that he did not have time to prepare was frivolous.

¶51        At the November 13, 2014 final trial management conference, the trial court heard argument on the motions from counsel for Murray and Day.  Counsel for Murray continued to object to the short notice provided by the subpoena, but stated Murray "would be willing to appear by phone." After noting "the deficiencies with the subpoena, mainly the time," were "an issue" for Day, the trial court quashed the subpoena as to personal appearance, but ordered Murray to appear telephonically.  At trial, Murray appeared with counsel by telephone, testified fully, and was subject to direct, cross, re-direct, and re-cross examination, as well as questions from the jury.[22]  Later, in denying Day's motion for new trial, the trial court ruled as follows:

> The jury heard Murray's testimony by phone.  It was within the discretion of the Court to permit him to testify telephonically.  Plaintiff's motion to compel him to appear in person was properly denied.

¶52        After reviewing the record, we agree with the trial court.  The cold transcript does not appear to support Day's characterization of Murray as "belligerent, non-responsive, irritable and angry," and even if it did, Murray testified fully, and the record does not indicate a miscarriage of justice occurred or that Day was deprived of a fair trial.  The jury had ample opportunity to assess Murray's credibility, and nothing indicates the jury failed to do its job.  *See generally Logerquist v. McVey*, 196 Ariz. 470, 488, ¶ 52, 1 P.3d 113, 131 (2000) (recognizing it is within the jury's province to determine witnesses' credibility), *superseded in part on other grounds by amendment to* Ariz. R. Evid. 702; *Cano v. Neill*, 12 Ariz. App. 562, 569, 473 P.2d 487, 494 (1970) (citation omitted).  The trial court did not abuse its discretion in allowing Murray to appear by telephone.

  *V.    Insurance*

¶53        Day argues he was prejudiced because the subject of liability and medical insurance was repeatedly raised during trial.  We disagree.

¶54        Admitting evidence of insurance may create an unacceptable risk that the jury, either in finding liability or in determining the amount of

---

[22]     After Murray testified, Day's next witness, Dr. Leroy Kareus, also testified telephonically.

the award to make, will be influenced by the fact that an insurance policy is available to pay any award made. *See generally Muehlebach v. Mercer Mortuary & Chapel, Inc.*, 93 Ariz. 60, 62, 378 P.2d 741, 742 (1963). However, the mere mention of insurance will not require declaration of a mistrial or a new trial, unless prejudice resulting from it is shown. *Id.* at 64, 378 P.2d at 743-44; *accord Michael v. Cole*, 122 Ariz. 450, 452, 595 P.2d 995, 997 (1979); *Sheppard v. Crow-Barker Paul No. 1 Ltd. P'ship*, 192 Ariz. 539, 547, ¶ 43, 968 P.2d 612, 620 (App. 1998).

**¶55** Day provides no citation to any mention of the word "insurance" in the record. Accordingly, he has arguably abandoned and waived his claim by failing to comply with Rule 13(a)(7), ARCAP. *See Ritchie*, 221 Ariz. at 305, ¶ 62, 211 P.3d at 1289. Also, the only mentions before the jury of the word "insurance" we could find in the trial transcripts came from Day and his witness, Officer Jarol, who testified on direct examination that in investigating an accident, he collects the "driver's license, insurance, [and] registration" from those involved before starting work on his report, and that leaving the scene of a collision without providing such information could subject a person to a "hit and run" charge. These brief mentions of insurance did not influence the verdict and were not prejudicial to Day. Further, a party cannot inject error into the proceedings and complain of it on appeal. *Acheson v. Shafter*, 107 Ariz. 576, 579, 490 P.2d 832, 835 (1971). Moreover, Day did not object. *See Ritchie*, 221 Ariz. at 303, ¶ 51, 211 P.3d at 1287 (recognizing that counsel's failure to object at trial generally waives the issue on appeal). Finally, the trial court instructed the jury not to consider insurance in its deliberations. We presume the jury followed the instructions given it. *See LeBlanc*, 186 Ariz. at 439, 924 P.2d at 443.

**¶56** The trial court also recognized the deficiencies in Day's argument when, in denying Day's motion for new trial, the court stated,

> The Court does not recall testimony regarding insurance or whether [Day] even objected during trial. [Day] does not attach a transcript. [Day] fails to demonstrate that the mention of insurance, if any, warrants a new trial.

We agree with the trial court. On this record, Day has shown no error, much less prejudice.

### VI. Costs and Attorneys' Fees on Appeal

**¶57** Armendt requests an award of attorneys' fees and costs on appeal pursuant to A.R.S. §§ 12-341.01 (2016) and 12-341 (2016),

respectively. This action does not arise out of a contract between the parties, and thus, Armendt is not entitled to fees under A.R.S. § 12-341.01. As the successful party on appeal, however, she is entitled to an award of her taxable costs under A.R.S § 12-341, contingent upon her compliance with Rule 21, ARCAP.

**CONCLUSION**

¶**58** For the foregoing reasons, we affirm the trial court's judgment in favor of Armendt.



AMY M. WOOD • Clerk of the Court
FILED:   AA